# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

JOHNSTON *v.* JARRET *et al.*

Decided November 30, 1878.

1878
Special Term.

1. Where a contract is made to sell a particular farm as the "home place," or all the lands "the vendor owns," and at the time it is known by the purchaser, that the vendor has brought an ejectment suit to recover a few acres of land, which he thinks belongs to the "home place," and the contract binds him to make the vendor a general warranty deed for the lands thus described, and put him in possession thereof; whether the disputed land was sold by the contract, cannot be determined until the determination of the ejectment suit.

2. Where a contract was made selling certain tracts of land, among which is one called in the contract the "home place" and sold as such, and at the time of the contract the vendee was informed by the vendor, that he had pending an ejectment suit to recover a few acres which he believed formed a part of the "home farm" and was included within the boundaries thereof, and afterwards, and before the determination of the ejectment suit, the vendee accepted a deed of general warranty for the tracts of land including the "home place," and, as the law then was, put it out of the power of the vendor to recover in his ejectment suit. HELD:

That this act was a waiver of vendee's right to insist upon the vendor putting him in possession of the disputed land, and the vendee was not therefore entitled to any abatement or suspension of the purchase money.

Appeal from a decree of the circuit court of Greenbrier county, rendered on the 13th day of November, 1876, in a cause in chancery in said court then pending, wherein Andrew D. Johnston was plaintiff, and James

Jarrett and others were defendants, allowed on the petition of said Johnston.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

On the 19th of January, 1871, Andrew D. Johnston and James Jarrett, entered into the following contract :

"This agreement, made and entered into this 19th day of January, 1871, between A. D. Johnston, of the first part, and James Jarrett, of the second part, as follows, to-wit :

"The said Johnston hath this day sold to said Jarrett his lands on Muddy Creek, including his home place, which he purchased from Jacob Hamilton, the lands devised to him by George Johnston, deceased, the land purchased of Ballard Caraway, and all the land owned by him, containing eight hundred acres, more or less. All of which I have heretofore owned, except two acres sold to Beard, and one-third of a tract of about 40 acres, known as the Read ——, and thirteen acres sold off to Spotts for tan yard, for which the said Jarrett is to pay said Johnston eighteen thousand seven hundred and fifty dollars, in the following manner, to-wit : Three thousand dollars in cash in ten days from this date, and seven thousand dollars in cash paper against the 1st of March next, and eight thousand seven hundred and fifty dollars against the 10th day of November next; Jarrett is to furnish four horses in Lewisburg on the 1st day of March next, which is to be taken by Johnston at valuation, and credit on the above amount due November next; Jarrett is to have possession of the farm on the 1st of March next, except the land that is sown in wheat, the house, and lot around the house, including the spring, garden, and a part of the barn, as much as he would need for his own use; and the ground sowed in

wheat Jarrett is to have possession of as soon as the wheat is cut and stacked or threshed, not to be pastured by Johnston, or the tenant; Johnston is to have privilege to use firewood and use of the house and lot until he moves from it, and if he does not move before the 1st day of November, he is then to give Jarrett possession of the house, &c., in full; Jarrett agrees to furnish pasture to Johnston for three or four cows and same number of horses, at a fair price, while Johnston remains, until November, 1871. Jarrett is to execute bond if this agreement is not binding; Johnston to make a warranty deed to Jarrett for said lands against the 1st of March next. Jarrett agrees that Johnston's sons is to have privilege to feed on a field across the bottom in front of the door, if they wish—the month of March and April. Dr. Prickett is to have privilege to remain till the 1st of April next.

"Given under our hands and seals this day and date above written.

"ANDREW D. JOHNSTON,    [Seal.]
"JAMES JARRETT.            [Seal.]"

A deed of general warranty was made in pursuance of said contract, on the 4th day of February, 1871, retaining a lien for the purchase money. All the purchase money except $300.00 was paid, the last payment being made by Jarrett on the 10th day of November, 1871.

On the 16th day of August, 1875, Johnston brought his suit in chancery to enforce his vendor's lien, and to recover the $300.00 residue of the purchase money, with interest thereon from the 10th day of November, 1871,

Jarrett answered the bill, claiming that there was a defect in the title to some two or three acres of the eighty-four and three-fourths acres, constituting the "home farm," and that the relative value of said land, with the improvements thereon, amount to more than the purchase money unpaid, and asked to be protected by the court, and not required to pay the residue of the purchase money until he had been put in possession of the

land, so adversly held by Rodgers *et al.* The answer also claims, that an ejectment suit was depending in the name of said Johnston, and that Johnston had consented to await the determination of the ejectment suit for the residue of the purchase money. That plaintiff did recover in the ejectment suit; but on writ of error the Supreme Court of Appeals had reversed the judgment, and remanded the case for a new trial, which had not been had. Respondent proposed to pay him the $300.00 if he would give him a bond of indemnity, which he agreed to do, but did not. That the plaintiff had little or no property, if he was not actually insolvent, so much so, that if defendant failed to get the land, he apprehended a total loss of its value, if required to pay the $300.00.

The plaintiff thereupon filed an amended bill, in which he set up his title to the land sold by him to Jarrett; that the defendants in the ejectment suit claimed, that the two or three acres they were contending for were no part of the eighty-three and three-fourths acres, but were included in four hundred and ninety acres patented by James Patterson; and that the line between the said eighty-three and three-fourths acres and the four hundred and ninety acres was a *common line*, and the dispute was, as to where the line ran. And this view seemed to be sustained by the calls of the deed and patent, exhibited with the bill. The amended bill made Mann and Rodgers, the adverse claimants, defendants; and Johnston alleged in his said amended bill, that at the time the contract was made, it was expressly agreed, as one of the stipulations therein, that said Jarrett, as to the land in controversy in said ejectment, was to occupy the place of the plaintiff and be substituted to his rights, and none other, with the positive understanding, that if the plaintiff should recover said land, the same should belong to said Jarrett, and if he failed to recover it, there should be no abatement of the purchase money on account of said failure, and that said stipulations should

have been made a part of the written contract, but by mistake or design of said Jarrett, who prepared said contract, he omitted to insert it in said contract; and that on the positive assurance, that said contract as written contained said stipulations, he signed the same without discovering the omission; prayed that the contract should be reformed and corrected, so as to make it represent the actual contract, &c., "and if the court should deem it advisable to decree, between the defendants Jarrett, Mann and Rodgers, as to the land held by the latter, against the claim of said Jarrett, that in that event the court may proceed to ascertain the respective rights of defendants, and decree accordingly, &c."

Jarrett answered the amended bill, and denied, that there were any stipulations made not embraced in the contract, and insisted on his rights under the same. There was no proof, that there were any such stipulations. The depositions showed, that the relative value of the land in controversy exceeded the purchase money retained, and the accrued interest thereon.

On the 13th day of November, 1876, the court entered a decree declaring that " the lot of land, occupied by the defendants Rodgers and Griswold, was sold to the defendant Jarrett by the plaintiff, as a part of the eighty-four and three-fourths acres, and for the recovery of which the plaintiff had then, and has now, pending an action of ejectment, and which as yet he has failed to recover, and place the defendant Jarrett in possession of, and that the relative value of the said lot of land exceeds the amount of purchase money retained by the said defendant Jarrett, and until the said defendant Jarrett is placed in possession thereof, he has a right to retain the same in hand for his indemnity,       *       *       *       That if plaintiff Johnston should recover the same in said ejectment     *     *     the said plaintiff shall be at liberty to sue the defendant, Jarrett, at law, or in equity, to recover balance due him on the contract of purchase in the bill mentioned.

The decree dismissed the plaintiff's bill, "without prejudice to any suit he may hereafter bring for the balance of said purchase money," and gave costs to defendant Jarrett.

From this decree the plaintiff appealed.

*A. C. Snyder*, for appellant, cited the following authorities :

2 Rand. 132; 5 Munf. 415; 1 Dana 303; 1 Metc. (Ky.) 216 ; 2 Dana 280; 1 A. K. Marsh. 24; 10 Johns. 587; 44 Mo. 379; 2 Ohio St. 361; 15 B. Mon. 627; 11 Gratt. 441; 13 Gratt. 380; 19 Gratt. 366; 4 W. Va. 273; 2 W. Va. 347 ; 5 Leigh 59; 3 Munf. 317 ; 4 Rand. 482 ; 4 Rand. 478 ; 14 Gratt. 102; 12 Sm. & M. 73; 3 A. K. Marsh. 288 ; 37 Penn. St. 318 ; 7 How. (U. S.) 132; 5 Com. 528; 6 W. Va. 168 ; 6 Allen 553 ; Const. Law Jour., Mar. 31, 1877, p. 225 ; 3 Ala. 251; 38 Mo. 55; 59 Penn. St. 84 ; 3 Dana 283; 5 Munf. 295 ; 6 W. Va. 168.

*Samuel Price*, for appellees cited the following authorties :

5 W. Va. 285 ; 7 Gratt. 399, 407 ; 5 Leigh 606; 3 Leigh 161.

JOHNSON, JUDGE, delivered the opinion of the Court :

The first error assigned is, that the court should have directed an issue *quantum damnificatus.* I see no reason for directing such an issue. The proof seems to be full ; and if there had been an absence of proof, the court could have referred the cause to a commissioner, to ascertain the relative value of the land, at the time the contract was made. *Clark* v. *Hardgrove*, 7 Gratt. 399.

The second error assigned is, that "the bill having been taken for confessed as to the defendants, Mann and Rodgers, the court should have decreed against them in favor of the plaintiff." This would have been to have tried the ejectment in chancery. A court of equity has no jurisdiction to settle the title, or boundaries, of land

between adverse claimants, unless the plaintiff has an equity against the adverse claimants; and equity against other persons will not give the jurisdiction. *Stuart's Heirs* v. *Coalter,* 4 Rand. 74; *Lange* v. *Jones,* 5 Leigh 192; *Steed* v. *Baker,* 13 Gratt. 380; *Wolfe* v. *Scarborough,* 2 Ohio St. 361. In this cause the plaintiff has no equity against the adverse claimants. His equity is against the purchaser, James Jarrett.

It is also assigned as error, that the court erred in dismissing the plaintiff's bill, and should have decreed in favor of the plaintiff. Whether this was error depends upon the question, as to what was involved in the contract between the parties. The contract contains this language: "the said Johnston hath this day sold to said Jarrett his lands on Muddy Creek, *including* his home place, which he purchased of Jacob Hamilton, the land devised to him by George Johnston, deceased, the land purchased of Ballard Carraway, *and all the lands owned by him,* containing eight hundred acres, more or less. All of which I have heretofore owned, except two acres sold to Beard, and one-third of a tract of about forty acres, known as the Read land, and thirteen acres sold off to Spotts for a tanyard; for which said Jarrett, is to pay Johnston eighteen thousand seven hundred dollars," &c. It further provides, that Jarrett is to have possession of the farm on the 1st day of March next, except the land that is sown in wheat, the house and lot around the house, including the spring, garden, and a part of the barn, as much as he should need for his own use; and the ground sowed in wheat, Jarrett is to have possession of as soon as the wheat is cut and stacked, or threshed, not to be pastured by Johnston or the tenant; Johnston is to have privilege to use firewood and use of the house and lot, until he removes from it; and if he does not move before the 1st day of November, he is then to give Jarrett possession of the house, &c., in full * * * Johnston to make a warranty deed to Jarrett for said lands against the 1st day of March next."

The deed of general warranty was executed by Johnston and wife to said Jarrett on the 4th day February, 1871, in less than a month after the contract was made, was acknowledged on the same day, and admitted to record on the 6th of February, 1871. The description of the land in the deed is substantially what it is in the contract.

It will be observed that *possession of all* the lands sold was to be delivered to Jarrett on the 1st day of November, 1871.

It is insisted by counsel for appellant, that Jarrett, having taken conveyance of a defective title *with knowledge of the fact,* he will not be heard in a court of equity in an effort to resist the payment of the purchase money on account of such defects, unless he alleges and proves fraud in the contract, and cites among other authorities, *Vail* v. *Nelson,* 4 Rand. 478; *Goddin* v. *Vaughn,* 14 Gratt. 102.

In *Vail* v. *Nelson* it appears, that the property was sold at auction. It was proved, that the advertisement was read by the crier before the biddings, and there was no stipulation therein as to *the time when the title should be conveyed.* It was proved, that the purchaser said, that he knew that the title was in part in infants and could not be conveyed until they became of age. The court said, upon the facts of that case it was impossible to resist the conclusion, that the purchaser knew perfectly well the state of the title when he purchased, and that no title could be made until the infants came of age; and that he neither demanded, nor expected, a title to be made until then. Not so in this case. The covenant bound the vendor to make a title to the land within a time specified, and to put the vendor in possession of the property.

The case of *Goddin* v. *Vaughn* was also a sale at auction. The court held that, "when the sale is of such a character and made under such circumstances, as fully and sufficiently to make known to the purchaser the exact nature of the title he is to expect, as where the

sale is made avowedly by an executor under the provisions of the will, or by a sheriff or commissioner under an order of court, he can of course only demand such title, as was in contemplation of the parties when the sale was made."

There is nothing in either of these cases to countenance the idea, that when the express contract is for a perfect title, the party can be put off with a defective title, even if the defect was by him known at the time.

The vendor of real estate is not responsible for any defects of title, unless he has bound himself by some covenant or warranty to protect the vendee, unless he has been guilty of some fraud or concealment. *Comm.* v. *McClanachan's ex'rs*, 4 Rand. 482.

But where he has bound himself to convey the land with covenant of general warranty, he is responsible for defect of title to any part of the land so sold; and a court of equity will not compel the payment of the whole of the purchase money, until the defect is removed; although there has been a conveyance of such land to the vendee. *Koger* v. *Kane*, 5 Leigh 606; *Clarke* v. *Hardgrove*, 7 Gratt. 399; *Renick* v. *Renick*, 5 W. Va. 285.

Where the contract made between the parties compels the vendor to convey the land with covenant of general warranty, and to put the party in possession of the land, a court of equity will protect the vendee against a defect of title to any part of the land included in the contract, although that defect was known to the purchaser, when the contract was made, unless there has been a waiver by the purchaser of such objection to the title. *Jackson* v. *Ligon*, 3 Leigh 161. The parties must be bound by the contract they made, if it was free from fraud and mistake.

But the case before us is peculiar, and does not fall precisely within the circumstances of any of the cases we have cited here, the contract was for all the lands the vendor owned on Muddy creek, with certain specified

exceptions. He also in the contract sells the home farm; that is the farm of eighty-three and three-fourths acres, where, as to a part thereof, the controversy is. His contract does not specifiy the boundaries of that farm; and it appears from the record, that Johnston and the adverse claimants, claimed the same line; but the trouble was to know just where that line ran. At the time the contract was made, as is shown by the pleadings in the cause, Johnston told Jarrett, that there was a dispute about the boundary, that certain parties were claiming several acres of the land, and that he had instituted an action of ejectment to recover it; that he thought it belonged to him and was a part of the "home farm."

It appears, that afterwards Johnston did recover in the ejectment suit, but the defendants had taken the case to the Supreme Court of Appeals, where the judgment of the circuit court was reversed on some ground not appearing in the record, and the case was remanded for a new trial; but that the new trial had not been had. Under these circumstances the plaintiff brought this suit, to recover the balance of the purchase money.

It is very clear, if Johnston had obtained a judgment in his ejectment suit, and evicted the adverse claimants before he asked the court for a decree for the residue of the purchase money, he would have been entitled to such decree. But in advance of the decision of that case how can it be known, whether the few acres of land then in controversy, did in fact belong to the "home place" sold by Johnston to Jarrett. If it was a part thereof, he sold it to Jarrett. If not a part thereof, he did not, under the terms of his contract, sell it to him. The vendor had chosen the forum, and the proper one; to test that question; and he had no right to bring his chancery suit for the residue of the purchase money, until that question had been determined, he having represented to Jarrett that he believed the land in controversy was a part of the home place. If he had finally tried his ejectment, and it had been decided against him, he

could then have brought his chancery suit, to recover the residue of the purchase money; and it would then have been a question before the chancellor, whether he would have been entitled to recover. How far in that case Jarrett would have been affected, if at all, by the verdict and judgment, we will now express no opinion.

We have been considering the cause, as if Jarrett had not, by his acts under the circumstances, waived his right to insist upon Johnston putting him in possession of the disputed land. That he could waive such right is well settled. 2 Sug. on Vendors 7 et seq. and cases cited. Sugden says : "Sometimes a purchaser has waived his right to object to the seller's title. Upon an express waiver little difficulty is likely to arise; but in most cases the waiver is not express, but implied from the conduct of the purchaser * * The question in each case is one of fact : Did the purchaser mean to waive, and has he actually waived, his right of examining the title? although his intention will be inferred from his acts, and no direct expression of it is required."

When a title could not be made to a most important, although a small, part of the estate, and the seller was in treaty to obtain a title by means of an exchange, but the time for completing the purchase having arrived, the purchaser, after warning from the seller's agent of what the operation of his taking possession would be, took forcible possession, and encouraged the owner of the part wanted to ask an unreasonable consideration for it, in consequence of which the treaty for the exchange fell through, the court held, that the purchaser had waived the objections to the want of title. *Calcraft* v *Roebuck*, 1 Ves. Jr. 221.

Syllabus 2.

In this cause a contract was made between the parties, providing for deed to be made by the 1st of March after the contract was made, and possession of the farm with certain exceptions to be given at that time, and full possession to be given on the 1st of November thereafter. Jarrett knew at the time the contract was made, that

Johnston had an ejectment suit pending to recover a few acres of ground, which he claimed belonged to the land, but of which of course he was not certain, as it was a question as to where the line ran. Jarrett knew, at the time he accepted the deed of general warranty on the 4th of February, 1871, from Johnston and wife, that as the law then stood, he had put it out of the power of Johnston to prosecute the ejectment suit, and recover therein, as the legal title to the land was no longer in him. *Johnston* v. *Griswold & Rogers,* 8 W. Va. 240. Therefore by accepting the legal title, when he did, and thus putting it out of the power of Johnston to recover the land in the ejectment suit, he must be deemed to have waived his right to insist upon Johnston putting him in possession of the disputed land, and was therefore not entitled to any abatement of the purchase money. By that act he plainly said, "I will take the land with this controversy pending, and take the risk of gaining or losing the land in dispute."

There was no fraud or concealment on the part of Johnston. There was no warranty that the disputed land belonged to the "home farm;" and Jarrett took upon himself the burden of ascertaining, whether it was a part thereof. Of course he could use Johnston's name in that controversy, if it was to his interest to do so. And he could now, since the passage of the Act of the Legislature February 28, 1877, do so, and might recover the land, if at all, in the name of Johnston, in the same ejectment suit. We can give no other interpretation of the act of Jarrett in accepting this deed, with full knowledge of the pendency of the ejectment suit, than to consider it a waiver of any right to insist upon being put into possession of the few acres in dispute, as thereby he put it out of the power of Johnston to prosecute the ejectment suit, and if he recovered therein, to put Jarrett in possession of the land in dispute.

For these reasons the decree of the circuit court of Greenbrier county, rendered in this cause on the 13th

day of November, 1876, is reversed, with costs to the appellant against the appellee, James Jarrett; and this cause is remanded to the circuit court of Greenbrier county with instructions to enter a decree requiring Jarrett within such a reasonable time, as the court may appoint, to pay to Johnston the residue of the purchase money to-wit: $300.00 with interest thereon from the 10th day of November, 1871, and the costs of said suit; and to appoint a commissioner to make sale of a sufficient portion of said land to pay the same, in the event Jarrett should fail to pay; and for further proceedings to be had in the case, according to the principles of of this opinion, and further according to equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.   CAUSE REMANDED.