# CHARLESTOWN.

BUTCHER AND DUNNINGTON, TRUSTEES v. PETERSON, *et al.*

Submitted June 24, 1885.—Decided September 19, 1885.

1. Where there is a contract for a sale of several adjoining parcels of land in gross for an entire sum, and the vendor warrants the title generally, if the vendee is evicted from a portion of the land by reason of the want of title in the vendor, he may elect to hold so much of the land as he can and compel the vendor to abate the purchase-money or compensate him for the part of the land from which he has been evicted, even though the parties were mutually mistaken as to the title of the vendor to the part so lost by eviction. (p. 450.)

2. In such sale, although the sale was in gross, and neither the quantity of land was specified nor any price fixed upon the separate interests or parcels, a court of equity will by reference to a commissioner or otherwise ascertain the relative value of the portion lost by the purchaser and decree its payment by the vendor. (p. 453.)

3. The measure of compensation for the land lost in such cases, where the vendor acted in good faith and believed he had the right to sell the land, is such portion of the purchase price as the relative value of the land lost bears to the purchase-price of the whole land. (p. 454.)

The facts of the case fully appear in the opinion of the Court.

*W. E. Arnold* for appellants.

*W. G. Bennett* for appellee.

SNYDER, JUDGE:

In January, 1859, Jacob J. Jackson made his will which was afterwards duly probated in Lewis county; by the second clause of the will, the testator devised to five of his children, viz: Elizabeth, George W., Margaret Drusilla, Cecelia B. and Jacob W., the farm on which he then resided, subject to dower of his wife Pamelia F. Jackson therein, providing therein that the farm should be used for the support of said children until the youngest should arrive at the age of

twenty-one years, and that then it should be held either jointly or severally by the said children, " and in case of the death of any of them, that his or her share shall pass to their heirs in the same manner it would under the law without this devise; " that one of said children, Jacob W., died in the year 1866, intestate and without issue; another one, Margaret Drusilla, married Robert E. Bush in 1871, and died in April, 1872, intestate and without issue, leaving her husband surviving; by written contract dated February 1, 1873, John C. Jackson, also a son of said testator and half-brother of the above named devisees, sold to Jasper Peterson, and agreed to convey to him by deed with general warranty, in consideration of $6,000.00, the following property :

First.—The dower estate of the widow of said Jacob J. Jackson, deceased, set apart by decree to her in the farm aforesaid.

Second.—The undivided interest of said George W. Jackson in said farm subject to the said dower therein.

Third.—" All the undivided interest of the said John C. Jackson which descended to him on the deaths of the said Jacob W. and Margaret Drusilla, and supposed to contain about fifty-two acres, being the land of which they were seized at the times of their deaths and the same that was devised to them by their father, Jacob J. Jackson.

Fourth.—A tract of twenty-five acres adjoining the said dower land.

Fifth.—The interests which descended to George W. Jackson upon the deaths of his half-brother and sister, the said Jacob W. and Margaret Drusilla, in the farm which was devised to them by their father, Jaccob J. Jackson ; and

Sixth.—The interest of said John C. Jackson in the wheat crops sown on parts of said lands by tenants. The value of these crops was shown by the proof not to exceed $8.00.

By deed, dated September 29, 1874, the said John C. Jackson and wife conveyed the aforesaid real estate to said Peterson with covenant of general warranty, retaining therein a lien to secure the payment of two bonds of $1,000.00 each for unpaid purchase-money. These bonds were assigned by John C. Jackson to G. J. Butcher and W. L. Dunnington, trustees, and in May, 1875, they brought this suit in the cir-

cuit court ot Lewis county against said Peterson and John C. Jackson to enforce the payment of said bonds by a sale of the land.

The defendant Peterson answered and also filed his cross-bill, making the said Robert E. Bush a party and averring that the said Bush, as the surviving husband of said Margaret Drusilla, claimed he was the heir of his late wife and as such, under the will of Jacob J. Jackson, he was the owner of the interest which descended from the said Margaret Drusilla at her death and which was a part of the land sold and conveyed by said John C. Jackson to said Peterson. He also averred in his cross-bill that said interest so claimed by said Bush was worth at least $2,500.00 and asked that the right to said land might be ascertained, and if it should be determin-that the said Bush was entitled thereto, that the value there-of might be set off against the said bonds for the purchase money.

Before the merits of this cause were decided, a decree was entered in another cause, which was subsequently heard with this, by which it was adjudicated and determined, that the said interest of said Margaret Drusilla in said land, upon her death, passed to and vested in her husband, the said Robert E. Bush, and thereby the said Peterson lost and was judicially evicted trom a portion of the land described in the third and fifth items of said contract of sale.

The cause was referred to a commissioner, and he reported that the whole land embraced in the sale and conveyance from John C. Jackson to Peterson amounted to 168 acres of dower and 134 acres in fee, and that the quantity from which the said Peterson was evicted by said Bush was forty-four acres, of the relative value of $1,443.26 upon the basis that the whole land sold was of the value of $6,000.00, the purchase price. There were no exception to this report.

On October 28, 1882, the court, being of opinion that Peterson was entitled to an abatement from the contract price of his purchase on account of the interest of Margaret Drusilla from which he had been evicted by the said Robert E. Bush, (but by reason of the equities arising between the plaintiffs, Butcher and Dunnington, trustees, and said Peterson, the latter should be required to pay to the said plaintiffs

the entire unpaid amount of said two bonds which was done,) thereupon decreed, that said John C. Jackson pay to said Peterson the said sum of $1,443.26, reported by the commissioner, with interest thereon from the date of said eviction and the costs of the suit. From this decree the said Jackson obtained this appeal.

The appellant has assigned and argued the following grounds for the reversal of said decree:

*First.* That the contract of sale was based upon the mutual mistake of the parties;

*Second.* That the sale was in gross and at the hazard of the purchaser; and

*Third.* That the contract embraced different subjects for an entire consideration, and there was, therefore, no way of ascertaining the abatement to be made for the portion lost by the vendee.

*First.*—It is insisted by the appellant that the parties were mutually mistaken as to the interest of the vendor in the land from which he was evicted by Bush; that this mistake was one either of law or of fact; if a mistake of law, no relief could be granted, and if a mistake of fact, the only relief which a court of equity could grant would be to rescind the contract of sale.

The doctrine which denies relief upon contracts entered into upon mistakes of law, so fully argued in this cause, has no application here, for the reason that the vendee is protected by the express warranty of title by the grantor. It is immaterial that the vendee had knowledge of all the facts in relation to the title, and that he accepted the conveyance or made the purchase, believing that said facts did not impair the title. When a purchaser has notice of a defect or incumbrance and requires from the vendor a warranty, the presumption of law is that the covenant was expressly taken against such known defects or incumbrances.—Rawle on Cov. Title 566; *Jackson* v. *Lizen,* 3 Leigh 161. If the purchaser had failed to contract for an express warranty, then this doctrine might apply; but to contend in the face of the positive covenant of Jackson that Peterson should be denied relief because he had knowledge of facts which in law destroys the title to a part of the land purchased, would be to

deprive him of the benefit of his warranty. The covenant of general warranty, unless qualified by the contract, in terms is a protection against defects of title whether they result from mistakes of law or mistakes of facts.

In regard to the rule upon which courts of equity rescind contracts of sale where there is a mutual mistake of the parties in entering into the contract, it is well settled, that such mistake must be of the substance of the thing contracted for; it must be such that the purchaser can not get what he substantially bargained for, or the vendor would be compelled to part with what he had no idea of selling. *Glassell* v. *Thomas*, 3 Leigh 113; *Graham* v. *Henderson*, 5 Munf. 185; *Lamb* v. *Smith*, 6 Rand. 552; *Crislip* v. *Cain*, 19 W. Va. 440, 474. But if the mistake does not affect the substance of the contract, so as to defeat the main purpose of the contracting parties, this rule has no application. In all cases courts of equity look to the substance of the contract, and do not permit small matters of variance to interfere with the manifest intention of the parties, especially where full compensation can be made on account of the loss or deficiency in the land sold. Equity will decree specific performance even in cases of executory contracts at the suit of the vendee where the vendor is incapable of making a complete title to all the land sold. The general rule in such cases is, that the purchaser, if he chooses, is entitled to have the contract specifically performed as far as the vendor can perform it, and have an abatement of the purchase-money, or compensation, for any deficiency in the title, quantity, quality or description of the estate. In such cases, however, the purchaser, if he elects to have such performance, can have relief only upon equitable terms. 2 Story's Eq. Jur., sec. 789; *Hill* v. *Buckley*, 17 Ves. 394; *Waters* v. *Travis*, 9 Johns. R. 465.

In the case of *Clarke* v *Reins*, the court, quoting from Lord Eldon in *Mortlock* v. *Butler*, 10 Ves. 292, 316, says: "If a man having partial interests in an estate, chooses to enter into a contract representing it and agreeing to sell it as his own, it is not competent for him to say afterwards, though he has valuable interests he has not the entirety, and, therefore, the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting

under these circumstances is bound by the assertion of his contract; and if the vendee chooses to take as much as he can have, he has a right to that and to an abatement." 12 Grat. 111; *Wood* v. *Griffith*, 1 Swanst. 43, 54.

The principles to be deduced from the foregoing and other authorities, many of which are referred to in *Crislip* v. *Cain*, *supra*, may be stated as follows: First.—When the contract is a sale in gross for an entire sum, if it is subsequently ascertained that there is either a deficiency or an excess in the quantity of the land specified therein, and it is shown that the error in quantity arose from the mutual innocent mistake of the parties, a court of equity may, where the mistake affects the substance of the sale, rescind the contract, but in the absence of fraud, actual or constructive, in either party, such court can allow no abatement for a deficiency or compensation for any excess in the land. *Hansford* v. *Coal Company*, 22 W. Va. 70.

Second.—If, however, in the case of such sale, the purchaser loses a part of the land purchased by him because the vendor had no title to the part so lost, and such part is not a substantial part of the land contracted for, then, neither the vendor nor the vendee can have the sale rescinded in a court of equity, even though the parties were mutually mistaken as to the title of the part of the land lost. But if in such case, the sale is without warranty of title and the vendee refuses to rescind the sale, he will not be decreed compensation for the land so lost. *Bailey* v. *James*, 11 Grat. 468.

Third.—But, if in the case last stated, the vendor has warranted the title, and the portion lost is much or little, the vendee may elect to hold so much of the land as he can and compel the vendor to abate the purchase-money, if unpaid, or, if paid, to make compensation for the land so lost by reason of the want of title or right in his vendor. *Att'y Gen.* v. *Day*, 1 Ves. 218; *Roffery* v. *Shallcross*, 4 Madd. 227; *Beverly* v. *Lawson*, 3 Munf. 317.

In the case at bar, the deficiency in the land sold arose from the want of title in the vendor, Jackson, to the portion lost; the sale was with warranty of title, and the vendee, Peterson, has elected to hold the portion to which Jackson has made him a good title with compensation for the portion

lost; this brings the case within the principle of the last proposition above laid down, and the circuit court did not err in so decreeing.

2.—That this was a sale in gross need not be disputed, because in such sale, as we have seen, the purchaser is entitled to compensation where the title is warranted and a portion of the land is lost by the want of title in the vendor. But it is insisted that the sale was one of hazard and the purchaser took the risk of the title. There is certainly nothing either in the contract or the conveyance to indicate any such risk, unless it is, as argued, in the use of the words, "all the undivided interest" of the vendor, John C. Jackson, "which *descended* to him on the death of Margaret Druscilla, and supposed to contain fifty-two acres." It is argued, that this language does not mean, and can not be construed to mean, the interest in the land which *belonged* to Margaret Drusilla at the time of her death, but only the interest, if any, which *descended* to appellant from her at her death; and as, in fact, no land descended to him from his sister, he sold none to Peterson; that he merely sold his *claim* to said interest and Peterson assumed the risk of getting title to it. This argument, it seems to me, is too untenable for serious refutation. It is contradicted by the whole tenor of the contract and the deed; and in the subsequent part of the same sentence of the contract, it is stated to be "the land of which" the said Margaret Drusilla was "seized at her death, being the same devised to her by the will of her father Jacob J. Jackson." It is entirely plain that the sale embraced the interests which the appellant claimed to own in the land of which his said sister died seized, and not his mere claim to said interests. The language thus relied on as a qualification of the sale, was employed simply as descriptive of the land sold, and it does not even tend to establish that Peterson took the risk of the title to it. This view is made conclusive by the fact that Peterson required from the appellant an express warranty of the title to all the land purchased without any exception or qualification.

3.—It is insisted by the appellant that, as the sale here was in gross, for an entire consideration, of different tracts of land, a part of which was in fee and part a dower estate with

wheat crops thereon, and as no price was fixed on the separate parcels and the number of acres are not given, it is impracticable to ascertain the value of the land lost, and for that reason a court of equity will deny relief in the form of compensation. The repeated decisions of the courts of Virginia and of this State negative the correctness of this proposition. It is certainly no more impracticable to ascertain the value of a portion of an entire tract than it is of a portion of several adjoining tracts. The so-called wheat crops on the land here are shown to be of so little value—not exceeding $8.00, that they may be eliminated from the present enquiry.

In *Clarke* v. *Hargrove*, 7 Grat. 399, the plaintiff had purchased from the defendant 1176 acres of land at the price of $11,000; after the land had been conveyed by deed with general warranty of title it was found that the vendor had no title to fifty-one acres of said land; held by the appellate court, reversing the circuit court, that the plaintiff was entitled to compensation for the fifty-one acres lost according to the relative value of the same to the whole tract. *Koger* v. *Kane*, 5 Leigh 606.

*Renick* v. *Renick*, 5 W. Va. 285, was a case of the sale of sundry tracts of land for an entire sum; neither the quantity of the land was specified in the contract of sale nor the value or quantity of any separate tract fixed; one of the parcels embraced in the sale was not owned by the vendor; the courts held that the vendee was entitled to an abatement of the purchase money on account of the loss of said parcel. The principles announced in the following cases fully recognize the doctrine of these cases. *Johnston* v. *Jarrett*, 14 W. Va. 230; *Depue* v. *Sergent*, 21 *Id.* 326; *Anderson* v. *Snyder*, *Id.* 632.

It is the settled law of this State that, where there is a sale of land with covenant of general warranty, and the purchaser is evicted by a third person holding a paramount title, the measure of damages to which the purchaser is entitled, where the vendor sold in good faith and without fraud, is the purchase money paid for the land with interest thereon from the date of the actual eviction. *Threlkeld* v. *Fitzhugh*, 2 Leigh. 451; *Stout* v. *Jackson*, 2 Rand. 132; *Lowther* v. *The Commissioner*, 1 H. & M. 202; *Thompson* v. *Guthrie*, 9 Leigh 101.

The same rule obtains when the eviction is of only a part of the land sold. In such case the measure of damages is, such a portion of the purchase money as the relative value of the land lost bears to the price of the whole land. *Humphreys* v. *McClenachan*, 1 Munf. 493.

The decree of the circuit court, as I understand it, conforms in all respects to the principles announced in the foregoing opinion, and it must therefore be affirmed.

AFFIRMED.