# CHARLESTON

## SMITH v. WHITE et. al.

Submitted June 14, 1911.   Decided January 21, 1913.

1. VENDOR AND PURCHASER—*Abatement of Price—Breach of Covenant.*

   In a suit to enforce a vendor's lien equity has jurisdiction to award relief to the grantee by abating from the purchase price any damage resulting from a breach of his grantor's covenants; and the damage may be ascertained either by directing an issue *quantum damnificatus* to be tried by a jury, or by reference to a commissioner. (p. 643).

2. COVENANTS—*Performance or Breach—Covenant against Incumbrances.*

   A covenant against incumbrances is one *in presenti;* and, if broken at all, is broken the instant it is made. (p. 645).

3. SAME.

   Such a covenant is broken by the existence, at the time of executing the deed, of a continuing right of way over the land granted, in favor of a third person; and if such easement materially affects the value of the land, it entitles the covenantee, at once, to substantial damages, whether the easement be in actual use, or be only potential. (p. 643).

4. SAME.

   The true measure of damages, in such case, is the difference between the market value of the land.subject to the easement, and its market value if the easement did not exist. (p. 645).

5. VENDOR AND PURCHASER—*Breach of Covenant—Abatement of Price.*

   A covenant of general warranty is so far broken by the failure of plaintiff's title to a portion of the land granted, even though the grantee's possession has not been actually disturbed, as to authorize a court of equity to relieve the grantee against the payment of the purchase price *pro tanto.* (p. 645).

6. EQUITY—*Vendor and Purchaser—Rights of Parties—Abatement of Price.*

   In case of the failure of plaintiff's title to a particular portion of the land granted, the amount to be abated on account thereof is not ascertained by the average price per acre for the whole tract, but is the relative value of the land lost. (p. 645).

Appeal from Circuit Court, Mingo County.

71 W. Va.

Suit by Will M. Smith against M. Z. White and others. Decree for plaintiff, and defendants appeal.

*Reversed and Remanded.*

*Edward C. Lyon, Brown, Jackson & Knight,* and *Sheppard, Goodykoontz & Scherr,* for appellants.

*Stokes & Bronson,* for appellee.

WILLIAMS, JUDGE:

This suit is brought by Will M. Smith against M. Z. White and the United Thacker Coal Company, a corporation, to enforce a vendor's lien reserved in a deed for 688.5 acres of land. The deed was executed by Smith to White 7th August, 1907, and contained the following covenants, viz.: "The parties of the first part covenant to and with the party of the second part that they will warrant generally the said lands and property hereby conveyed, and that said lands is free from all encumbrances." The consideration was $42,000 and the suit is to enforce the last deferred payment, being $14,000 with interest from date. The suit was brought originally against M. Z. White alone. White answered that the land was purchased by him for the United Thacker Coal Company and that it furnished the money with which to make the cash payment and to pay the first deferred purchase money note, and averred that, immediately upon receipt of the deed to him, he had executed to said company a written declaration of trust. Thereupon plaintiff amended his bill bringing in the coal company. It answered the bill and amended bill, setting up the defenses that plaintiff's covenants were broken, in that his title to 50 acres, a part of the land conveyed, was fatally bad, and that there existed upon the land, at the time of the conveyance, a right of way in favor of the Logan Coal & Timber Association created by deed executed by Jacob Smith, plaintiff's devisor, in the year 1900. That deed granted to certain named trustees for the Logan Coal & Timber Association, a right of way along Mate Creek, over the 688 acres of land "for the construction and use *or* roads, roadways, tramways, railways, and bridges, for the purpose of transporting coal, gases, salt-water, oil and minerals, *lugs* and lumber and every description to, from and

over a certain tract *of* parcel of land lying on Mate Creek in Mingo county, West Virginia, and adjoining a tract conveyed by the said Trustees to the said Jacob Smith upon certain trusts, etc., by said above mentioned deed, together with full mining privileges and the right to erect tipples, and other buildings or structures necessary for mining and marketing said minerals and lumber." The defendant company in its answer alleges that said trustees are asserting the rights conferred by said deed of November 1, 1900, and are threatening and fully intending to use all of the rights conferred by that deed, and that said rights materially affect the value of respondent's land which was purchased on account of its coal; that the valley of Mate Creek is narrow and the mountainsides steep, and that the only practicable way of developing respondent's coal is by means of a railroad and coal tipples, along Mate Creek which may be wholly occupied by the claimants of the aforesaid easement; and averred that it had suffered damages by reason of the existence of said easement to the amount of $20,000.

The court sustained a demurrer to the allegations of defendant's cross-bill answer relating to the breach of covenants and claim for damages, and gave a personal decree against the defendant M. Z. White for $16,807, and in default of its payment, decreed a sale of the land. From that decree defendants have appealed.

It is a settled principle of equity that having jurisdiction of the subject matter and the parties, it will administer complete relief to all parties. If defendant's cross-bill avers a state of facts which entitles it to relief, even though it may have an adequate remedy on account thereof in a court of law, its cross-bill answer should not have been dismissed. The chancellor evidently dismissed it because he thought equity had no jurisdiction to administer relief, for he did so without prejudice to the right of defendant to institute another suit. But it has long been the settled rule of practice, both in Virginia and in this state, that a court of equity, when once it has acquired jurisdiction of the cause of action and the parties, it will determine all questions involved, and settle the rights of all the parties, even though it should necessitate the ascertainment of unliquidated

damages. *W. Va. &c. Land Co.* v. *Vinal,* 14 W. Va. 637; *Mason* v. *Bridge Co.,* 17 W. Va. 396; *Forsyth* v. *City of Wheeling,* 19 W. Va. 318; *Bettman* v. *Harness,* 42 W. Va. 433; *Hotchkiss* v. *Plaster Co.,* 41 W. Va. 357. "Equity having acquired jurisdiction of a cause for one purpose, although the relief sought be finally denied, any relief, legal or equitable, justified by the pleadings and tending to end litigation between the parties, will be granted." *Evans* v. *Kelley,* 49 W. Va. 191, (syl. pt. 3); *Grubb* v. *Starkey,* 90 Va. 831; *Miller* v. *Wills,* 95 Va. 337.

In *Mason* v. *Bridge Co., supra,* plaintiff was owner of an interest in a ferry franchise on the Shenandoah River, and the defendant was about to erect a toll bridge across the river in close proximity to the ferry landing; he sued in equity to enjoin the erection of the bridge; he also alleged that stone had been taken from his land, by defendant, for the abutments of the bridge, and prayed for an accounting for the value of the stone so taken, and for damages done to his land, as well as for an injunction. On the hearing the circuit court dissolved the injunction which had been awarded by the county court, and at a later day dismissed plaintiff's bill. On appeal this Court reversed the decree of the circuit court in part, and continued the injunction in force, so far as it restrained the bridge company from constructing and using its bridge until compensation was paid or secured to be paid plaintiff on account of the damages to his ferry franchise; and remanded the cause to the circuit court for the ascertainment of damages by directing an issue *quantum damnificatus.*

In *Forsyth* v. *Wheeling, supra,* Mrs. Forsyth brought a suit to enjoin the city from opening and using a street across her lot without her consent, and without any proceedings to ascertain what would be a just compensation to her for the land to be taken therefor. She also claimed damages for the trespass already committed before suit brought. The circuit court perpetually enjoined the city from opening the street, but failed to give damages for the trespass? On an appeal taken by the city, plaintiff cross-assigned as error the failure of the court to award her damages for the trespass. This Court sustained the point, and reversed so much of the decree as failed to provide for ascertaining plaintiff's damages, and remanded the cause

with instructions to refer it to a commissioner to ascertain the damages.

As further illustrating equity jurisdiction in such matters, this Court has held that, where there has been a conveyance of land with covenants of general warranty, which is a covenant real running with the land and is never considered as broken until an ouster, equity has power, nevertheless, to enjoin the collection of the purchase money before actual ouster, if it be clearly shown that the grantor's title is defective. *Harvey* v. *Ryan,* 59 W. Va. 134.

The purpose of the present suit being to enforce a vendor's lien it is clear that the vendee has the right to set up, as a matter of defense thereto, the breach of any covenant contained in the deed, which would entitle him to damages in an action at law therefor. It would be inequitable to require the vendee to pay the purchase money when he has a present right of action against his covenantor for breach of covenant, and take the risk of his insolvency if he should thereafter sue at law. The covenantor is in default and has no right to demand the purchase price until he makes good his covenant, either by removing the incumbrance or responding in damages.

A covenant against incumbrances is a personal, not a real covenant; it is a covenant *in presenti* and is broken the instant the deed is executed, if the incumbrance exists. And it is a general rule of law subject to few, if any, exceptions, that a broken covenant is not technically assignable; that is, it does not pass by grant of the land. Another rule, universally recognized by the courts, is, that a breach of covenant affords immediate right of action. Consequently, there is no question that defendant, in this case, could have sued on the broken covenant the instant the deed was delivered.

The only questions in the case which have given us any serious trouble are, (1) has defendant suffered substantial damages, since it appears that the claimant of the easement has not yet actually occupied its land; and (2) if entitled to substantial damages, what is the proper rule for ascertaining them? On these points there is some conflict in the decisions of the various courts of the country, some of them taking the view that, until the covenantee has either been put to the expense of

removing the incumbrance, or has been disturbed in his possession by an actual adverse occupation, his damage is only nominal. On the other hand, a number of courts hold that, if the easement is a continuing and irremovable one, the covenantee is entitled to substantial damages regardless of whether his possession has been actually disturbed; and it appears to us that the latter is much the more equitable rule, and is more in harmony with other well established principles of law. Using the present case as an illustration, the statute of limitations unquestionably began to run against the covenantee from the execution of the deed, and if it be not entitled to substantial damage until the railroad and tipples are actually built on its land, and if this should not be done within ten years, and should be done thereafter, it would be remediless. But it alleges in its answer, which is in its nature a cross-bill, that it purchased the land on account of the coal it contained, and for the purpose of opening and operating coal mines upon it; that the valley of Mate Creek is so narrow and the mountain sides so steep that it is not practicable to build more than one railroad in said valley, and that it is the only place furnishing access to its property for developing it and marketing the coal, and that the occupation of the creek by the existing right of way in favor of the Logan Coal & Timber Association virtually destroys the value of defendant's property. In view of these facts and circumstances, which defendant was not permitted to prove, but which, upon the demurrer must be taken as true, is it not apparent that defendant has suffered substantial damages, even before the right of way has been actually made use of? There can be no doubt that the mere existence of such an easement does materially diminish the market value of the servient estate. Is not the *jus disponendi* essential to the complete enjoyment of land, and is it not a matter of material interest to the owner to have it cleared of any incumbrance that substantially diminishes its value in the market? How can an owner of land be said to have full and complete enjoyment of it, if he is not able to sell it for a fair and reasonable price because of the existence of an incumbrance on it? Again, suppose defendant should desire to develop its land, by building a railroad, opening coal mines and erecting tipples, could it safely erect a single

tipple, or build a yard of railroad without risk of disturbance in the enjoyment thereof, by the owner of the superior right? So that, whether defendant desired to sell, or to develop its coal land, it would be materially embarrassed. It is, therefore, inequitable to deny defendant substantial relief; its injury is material and its relief should be substantial and complete.

In case of a permanent, irremovable easement, the rule for measuring the damages suffered by the owner of the servient estate, is the difference between the market value of the land with the easement upon it, and its market value if the easement did not exist. And this difference in value would seem to be just as easy of ascertainment, whether the easement is' actually used, or is only potential.

This Court has frequently held that equity has jurisdiction to abate from the purchase price of lands sold by the acre, because of a shortage. *Butcher* v. *Peterson,* 26 W. Va. 447; *Crislip, guardian* v. *Cain,* 19 W. Va. 438; *Kroger* v. *Kane,* 5 Leigh 606; *Smith* v. *Ward,* 66 W. Va. 190. And the general rule for determining the amount to be abated is the average price per acre multiplied by the number of acres wanting. But this rule is subject to the exception that, if the abatement is on account of the loss of a particular part of the land which has been conveyed, because of the failure of grantor's title thereto, the amount to be abated is not then the average price per acre but is the relative value of the particular land lost. *Butcher* v. *Peterson, supra; Smith* v. *Ward,* 66 W. Va. 190. Such an abatement is no more certain of ascertainment than are the damages in the present case.

*Kellogg* v. *Malin,* 62 Mo. 429, was an action at law for breach of a covenant against incumbrances, but it serves well to illustrate the rule for the ascertainment of damages in the case of a continuing and irremovable incumbrance. In that case the incumbrance was a railroad right of way, only part of which was actually occupied by the railroad track, the unoccupied part on each side of the track being occupied and cultivated by the covenantee under permission from the railroad. The trial court, by its instructions, authorized the jury, in estimating the damages, to consider not only the land actually occupied by the railroad, but also to take into consideration the perpetual

right of the railroad company to occupy a strip fifty feet in width on either side of the center of its track; and those instructions were held by the supreme court to state the law correctly.

The opinion in *Funk* v. *Voneida,* decided by the supreme court of Pennsylvania in 1824 and reported in 11 Serg. & Rawle 109, is instructive, because of the able discussion of the question which we are now considering. Funk had sued Voneida and another, as executors of Wm. Bechtoll, deceased, for breach of covenant against incumbrances. Prior to the conveyance to Funk in 1814, Bechtol had executed a mortgage upon the land, payable in installments, the last of which was to become due in April, 1830. Plaintiff had failed to allege any special damage, and the court below instructed the jury that he was not entitled to recover anything. But the supreme court reversed the judgment, and held that he was entitled to recover at least nominal damages. And, notwithstanding the opinion in that case is purely *obiter,* so far as it relates to what plaintiff should have recovered, if his declaration had contained the proper averment as to damages, it is, nevertheless worthy of consideration because of the force of its logic. On pages 114-115, Duncan, J., says: "On the whole of this case, my opinion is, that the charge of the Court was erroneous, as the plaintiff had a cause of action without proof of actual damage, on the breach which instantly arose, at least, for nominal damages. And although the ground is untrodden, it is the opinion of my brother Gibson, as well as myself, the Chief Justice giving no opinion, not having been present at the argument, that the plaintiff, by assigning specially the consequential damages arising from the breach of covenant, according to the evidence offered by him, stating that the land was of less value, by reason of the incumbrance, and that he was prevented from selling it, as advantageously as he might have done, and that in fact, it was sold by process of law for so much less, would be entitled to recover the full value of the mortgage. Whether a grantee could not, by calling on the grantor to remove the incumbrance, recover this value, where there had been no sale, no eviction, and even before the mortgage money became due, is another question, which it is not necessary now to decide. But in tracing this doctrine, both in courts of law and equity,

it is by no means clear, that in our mixed administration of law and equity, he ought not.  It would be very inconvenient if he should not.  Transfers of land are so very frequent; lands are so continually changing owners; the policy of our laws is so much in favour of removing every impediment in the way of alienation, and the hardship is so great on the grantee, who is entitled to the full benefit of his covenant, that I would feel a strong desire to relieve him, if by analogy to any principle of the common law, or any rule of equity, it could be done.  For the grantee to wait until he is evicted, locks up all property; suspends all improvements; for who would be willing to make improvements, and wait till he is evicted; and when he, viz: the grantor, may be unable to make any compensation.  The arguments *ab inconvenienti*, are unanswerable.  And why should he not be obliged, immediately, to perform his covenants?"

*Mitchell* v. *Stanley*, 44 Conn. 312, was an action for damages for breach of covenant against incumbrances.  The incumbrance there was a right of way along and over plaintiff's land, within ten feet of a canal, for the purpose of cleaning and repairing the canal, upon paying the owner of the land reasonable damages.  In the action it was found that the actual damage for the exercise of the right, up to the time of bringing the suit was $10, but that the land was worth $750 less because of the existence of the incumbrance.  The court below rendered judgment for $10 only.  But on appeal the judgment was reversed, the supreme court holding that plaintiff was entitled to recover $750.

The rule is thus stated by Washburn, in his work on Real Property, (6th ed.) Vol. 3, sec. 2411: "If the incumbrance be of a permanent character, such as a right of way or other easement which impairs the value of the premises and cannot be removed by the purchaser, as a matter of right the damages will be measured by the diminished value of the premises thereby occasioned, to be determined by a jury ."  To the same effect is the text in 18 A. & E. E. L. (2nd ed.) 179.  See also, *Lamb* v. *Danforth*, 59 Me. 322; *Fagin* v. *Cadmus*, 17 Vroom (N. J. L.) 441.

*Harlow* v. *Thomas*, 15 Pick. (Mass.) 66, was an action for breach of covenant against incumbrances.  The breach there

consisted in the existence of a right of way over plaintiff's land, in favor of a third person. The court held that he was entitled to recover substantial damages.

The fact that the deed, granting the right of way in question, was recorded, or that defendant's agent, White, may have had knowledge of it, can not affect its right of recovery for breach of the covenant. Such evidence is not admissible to vary or contradict the express covenant that no incumbrance existed. *Harlow* v. *Thomas, supra.*

Defendant is also entitled to an abatement from the purchase price to the extent of the value of the 50 acres, part of the 688.5 acres, provided it can prove the allegation in its answer in respect to plaintiff's defective title thereto. *Butcher* v. *Peterson,* 26 W. Va. 447, and *Harvey* v. *Ryan,* 59 W. Va. 134.

It was plaintiff's duty to remove the incumbrance, and to perfect his title to said 50 acres, if defective, or answer to defendant in substantial damages therefor. And, in case of the easement, such damage is the difference in value of the land, subject to the easement and its value if the easement did not exist. The circuit court erred in failing to ascertain the damage and in not giving defendant an opportunity to prove the allegation concerning the defect in plaintiff's title to the 50 acres. The decree appealed from will be reversed, and the cause remanded to the circuit court of Mingo county for further proceedings therein to be had according to the principles herein announced.

*Reversed and Remanded.*