# CHARLESTON.

ALICE MOORING v. WEALTHY G. WARNOCK AND R. M. WARNOCK

Submitted February 19, 1924.    Decided February 26, 1924.

1. VENDOR AND PURCHASER—*Measure of Damages for Breach of*
   *Land Contract Stated.*

   In an action at law to recover damages for breach of an
   executory contract in writing for sale of land, where the
   lreach is caused by fraud or misconduct on the part of de-
   fendant, the vendor, the measure of damages is the difference
   between the value of the land at the time of the contract and its
   value at the time of the breach.  (p. 544).

2. SAME—*Measure of Damages for Breach of Land Contract With-*
   *out Fraud Stated.*

   If there be no fraud, or what amounts to fraud, on the part
   of the vendor, the measure of damages is the purchase money
   paid, with interest; and if no purchase money has been paid
   the damages are nominal.  (p. 543).

3. SAME—*Generally Best Evidence of Value of Land is Agreed*
   *Price.* '

   Generally, the best evidence of the value of the land is the
   price agreed upon at the time of the contract.  (p 543).

4. SAME—*Verdict for More Than Purchase Price for Breach of*
   *Contract Without Competent Evidence of Value of Land*
   *Should be Set Aside.*

   In such action if there be no competent evidence of the value
   of the land at the time of the alleged breach, and no evidence
   tending to show it, a verdict for more than the purchase money
   paid, if any, with interest, or more than nominal damages,
   where no purchase money has been paid, has no basis, and
   should be set aside.  (p. 544).

5. SAME—*Vendee Cannot Recover for Breach of Land Contract*
   *Unless Performance Shown.*

   In such action before the vendor can recover he must show
   that he has performed on his side every condition precedent
   stipulated for in the written contract.  (p. 545).

Error to Circuit Court, Cabell County.

Action by Alice Mooring against Wealthy G. Warnock and
another.  Judgment for plaintiff, and defendants bring error.

*Reversed, verdict set aside, and new trial awarded.*

*Sanders & Smoot* and *J. H. Stricklin,* for plaintiffs in error.

LIVELY, JUDGE:

This action is in assumpsit to recover damages for breach of an executory contract in writing for the purchase of real estate in the city of Huntington. The declaration alleges damages in the sum of $5,000. The verdict and judgment is for $400; to which judgment this writ was awarded.

Plaintiff, Alice Mooring, owned a lot 30x125 feet fronting on Minton street in the city of Huntington, on which was erected a small dwelling. It appears that there were two deeds of trust, or liens, against this property, the exact amount of which the record does not disclose. Defendant, Mrs. Wealthy G. Warnock, also owned a lot of land on Eleventh street in said city, which she had recently purchased from W. H. Kincaid, on which was erected a larger dwelling house and on which a lien for purchase money amounting to $6,500 existed in favor of Kincaid. It will be observed that each of the parties owned equities in their respective properties. Through the agency of a female real estate agent, Mrs. Inman, a contract in writing was entered into between Mrs. Mooring and Mrs. Warnock and her husband for a mutual exchange of these properties, dated the 17th day of March, 1922. In this agreement the Warnocks sold their house and lot to Mrs. Mooring at the price of $8,500, to be paid in part by a conveyance to them from Mrs. Mooring of her house and lot, the value of which is not stated. The residue of the purchase price of the Warnock property was to be paid by Mrs. Mooring in discharge of the Kincaid lien, which was represented by Warnock's notes to Kincaid payable at the rate of $65 per month. It was stipulated that if any difference should exist in the equity in the property which the Warnocks agreed to convey, and the equity in the property which Mrs. Mooring agreed to convey, the latter should execute her note for such difference to the Warnocks payable one year from date. The Warnocks agreed to execute a deed for their property within ten days from the date of the contract, providing Mrs. Mooring was ready to deliver to them an apt and proper deed for her property and to execute and deliver notes for the residue of the purchase price, if any. The terms of the agreement were formulated

on the 16th of March, 1922, but the writing was not formally
executed until the next day, on the morning of which latter
day Mrs. Mooring inspected the house of the Warnocks and
was shown over it by Mrs. Kincaid who then occupied the
house; and when it developed that the Kincaids would con-
tinue to occupy the property until they had built a new
house then in contemplation or then being erected. After
her inspection of the property the agreement was formally
executed. On the 18th of March, Mrs. Inman, who seemed
to be anxious to have the deal closed, there being a commission
coming to her of $200, had attorneys prepare two deeds for
the mutual exchange of the two properties. Mrs. Mooring
and her husband signed and acknowledged the deed of their
property to Mrs. Warnock on the 20th day of March, 1922.
It appears that Mrs. Inman took the deed from the Warnocks
so prepared to them for execution and insisted upon it being
signed. They raised some objection to the form of the deed,
and asked that it be corrected and the deed was taken by War-
nock to the attorney for that purpose, but was not immedia-
tely corrected. It does not appear that the Mooring deed
signed and acknowledged had ever been tendered to or sub-
mitted to Warnock; nor was a note executed or tendered to
him by Mrs. Mooring, or Mrs. Inman for her, for the differ-
ence in the equities, if any existed in the exchange of the
properties. The value of the Mooring property was not
stated in the agreement, and there is nothing to show the
amount of the liens against it nor the value of her equity
therein. After some delay in which the attorney said he
made various efforts to induce the Warnocks to sign the deed
prepared by him for their property, Mrs. Mooring, or at
least Mrs. Inman for her, became insistent that the deal be
closed and they both state that Mr. Warnock refused to com-
plete the deal and execute his deed. Mrs. Inman says he
gave as a reason that he could make more money out of his
property by holding it, and Mrs. Mooring says he came to
her both before and after her suit was instituted and tendered
back her check for $10 which she had given him, presum-
ably on the day the trade was made, and stated on both oc-
casions that he would not complete the contract by the execu-

tion of his deed. She also stated that she would not have taken the Warnock house while it was occupied by the Kincaids. This statement by her was stricken out by the court, and is one of the points of error insisted upon by defendant. We pause here to say that we do not think this was prejudicial error. She was insisting upon the exchange of the properties and the completion of the contract from the day it was made; had executed her deed and was insisting upon execution of the deed to her by the Warnocks. Her declaration, above set out, would have little weight against these insistent offers and efforts to get title to the property. The suit was instituted on the 10th day of April following. While it was pending and after the Kincaids moved out of the house some time in June, Warnock tendered to Mrs. Mooring a deed for his property and asked for her deed and an ascertainment of the value of the equities. He then desired to complete the contract. This was refused by her because she had then instituted her suit.

There is much evidence in the record tending to show that Warnock did not refuse to carry out the agreement and that the delay was occasioned by inaccuracy in the papers prepared for its consummation. He and his wife both say they never refused to carry out the contract. It is unnecessary to detail this evidence for the defense because the jury has found for the plaintiff and has concluded that defendants breached the agreement. Some time after Mrs. Mooring refused to accept his deed and close the contract (how long afterwards is not shown) the Warnocks exchanged their property with another person for a smaller and less expensive dwelling in another part of the city. Warnock says this exchange was less beneficial to him than if he had traded with plaintiff; and he is confirmed in that statement by Pilcher, a real estate agent. Mrs. Inman, who seems to be the principal witness for plaintiff, thinks the later exchange made by Warnock was of greater value to him than the contract made with Mrs. Mooring. She said she "figured it out" to that conclusion.

The errors complained of are: (1) that the demurrer to the declaration should have been sustained; (2) that the

court erred in striking out the testimony of Mrs. Mooring that she would not have taken the property as long as the Kincaids remained therein; (3) that it was error to refuse to grant the motion for a new trial, because the verdict was contrary to the law and evidence; as no proper measure for damages was shown.

We think the declaration is sufficient. It contains the common counts; and a special count which sets out the contract in full and charges that defendants did not perform that contract but that plaintiff did keep and perform her part thereof in all respects, according to the tenor and effect and true intent and meaning thereof, and that by failure of defendants to perform said contract plaintiffs have become indebted to her in the sum alleged and refused to pay although often requested, by which she is damaged to the amount alleged. It is claimed by plaintiffs in error, the Warnocks, that the declaration should have charged that the equities in the respective properties under the contract had been ascertained and a note for the difference therein executed and tendered by Mrs. Mooring in the performance thereof. This objection, we think, would be properly addressed to a defect in the evidence to sustain the declaration, and not as a defect in the declaration. As above set out, plaintiff in her declaration says she has performed her part of the contract in every respect according to the true intent thereof. Whether she has done so is a matter of evidence under her allegation. The second point of error with regard to the evidence of Mrs. Warnock, stricken out by the court, has been discussed above.

The third point of error, we think, is well taken. The measure of damages for breach of an executory contract for the sale of real estate, where the breach is caused by fraud, or a wilful refusal of the vendor to carry out the contract, or where he has deeded his property away or done some act voluntarily by which he renders it impossible for him to transfer the property and carry out the contract, is the difference between the value of the land at the time of the contract and its value at the time of the breach. It will be observed that the breach of the contract as claimed by plaintiff was within a few days after the agreement was made, possibly within the ten days in which the parties stipulated for the execution

of the deeds. The suit was instituted within less than a month after the date of the contract. We find no evidence whatever of the value of the Warnocks' property at the time of the alleged breach; neither do we find any evidence fixing the value of the Mooring property at the time of the agreement or at the time of the breach. Mrs. Mooring does not attempt to state any values; she bases her damage upon the fact that she did not get immediate possession of the property contracted for, saying that she desired a larger house and that she wanted an invalid married daughter to reside with her and that a larger house than the one she then occupied, would permit her to do so. Mrs. Inman, the female real estate agent, says Warnock held his property at the price of $10,000, and that she considered it worth that much in the summer following the trade. There is nothing in her testimony which would show the value of this property either at the time of the contract or at the time of the alleged breach. She is the only one who testifies upon this point. It is well settled in this state and by decisions of the supreme court of Virginia rendered before the formation of this state and binding upon us, that where there is an executory contract for the sale of land and it is breached and there is no fraud or what amounts to fraud on the part of the vendor the measure of damages is the purchase money paid, if any, with interest; and if no purchase money has been paid the damages are nominal. *Hoon* v. *Hyman,* 87 W. Va. 659; *Mullen* v. *Cook,* 69 W. Va. 456; *Thompson* v. *Guthrie,* 9 Leigh 101; *Wilson* v. *Spencer,* 11 Leigh 261; and in such cases it is generally conceded that the best evidence of the value of the land at the time of the purchase is the purchase money price agreed upon by the parties. *Stout* v. *Jackson,* 2 Rand. 132; *Newbrough* v. *Walker,* 8 Gratt. 16.

In view of the verdict it may be considered that the Warnocks breached the contract wilfully without good excuse a short time after it was made, and in such cases the measure of damages is the difference between the value of the land at the time of the contract and the value at the time of the breach. *Mullen* v. *Cook, supra; Wilson* v. *Spencer, supra; Butcher* v. *Peterson,* 26 W. Va. 447; 2 Minor's Inst. p. 781. It is apparent that there was no basis of damages on which

the jury could find a proper verdict; and it is also apparent that their verdict exceeds mere nominal damages for the amount, if any, paid with its interest. While it seems that a check for $10 was given by Mrs. Mooring to Warnocks about or at the time of the contract, it is not by any means clear that this check was ever cashed. The record is silent on that point.

No instructions were given to the jury, and they were left to imagine what, if anything, the damages should be.

There is another reason why this verdict and judgment cannot stand. There is nothing whatever to show that the plaintiff performed her part of the agreement by ascertaining the difference between the equities, if any existed, and by tendering a note therefor. A purchaser cannot maintain an action at law against his vendor for a breach of an executory contract for the sale of land unless he shows that he has performed on his side every condition precedent stipulated for in the contract. The execution and delivery of the deed and the payment of the purchase price either in money or by notes in accordance with the contract are mutual and dependent and are to be performed simultaneously. *Baird* v. *McAllister*, 33 W. Va. 738. We think it was necessary that Mrs. Mooring should have executed or show some excuse for not executing her note payable one year after date for the difference in the equities, if any, as provided in the contract at the time she required Warnocks to execute and deliver their deed. There is nothing in the record showing that she had at any time ascertained the difference, if any, in the equities. It is true that Warnock did not rely upon this as a reason for not executing his deed at the time of the refusal. However, he and his wife testify that they did not know, and it had never been ascertained or attempted to be ascertained, what the debts were against the Mooring property. They say they asked Mrs. Mooring to tell them, and she was uncertain about it. However, we do not think the plaintiff would be excused under the circumstances from performing or offering to perform the stipulations in her contract. On a new trial this defect in the evidence may be cured; or good reason excusing her from performing the conditions of the contract may appear.

Because of want of proper evidence on which the jury could base a verdict for the damages which they have given, the verdict will be set aside, the judgment reversed and the case remanded for a new trial.

*Reversed; verdict set aside; new trial awarded.*