Argued 14 November; decided 18 December, 1899.

## HENRY v. HAND.

[ 59 Pac. 330.]

1. Construction of Indemnity Bond—Damages.—A bond to an owner conditioned that a contractor will complete a building according to certain plans, "and keep the premises free from all mechanics' liens" for a specified period after the completion, is an undertaking to indemnify against damages, and not against liability, so that before the owner can recover more than nominal damages for a breach of the bond, he must have paid the lien claims: *Cochran* v. *Selling*, 36 Or. 333, applied.

2. When Mechanics' Liens Attach.*—Under Section 3671, Hill's Ann. Laws, a lien for materials or labor expended on a building attaches when the materials

---

*Note.—See, to the same effect, *Ainslie* v. *Kohn*, 16 Or. 363; *Curtis* v. *Sestanovich*, 26 Or. 107, and *Fitch* v. *Howitt*, 32 Or. 396.—Reporter.

are first placed on the premises, or when the first work begins, but it remains inchoate until the claim therefor is filed under section 3672, when it becomes effective, and relates back to the commencement of the structure.

3. CONTRACTOR'S INDEMNITY BOND—FINAL PAYMENT.—Where a building contractor covenanted to keep a building free from liens for a period extending five days beyond the time for making the last payment, neither he nor his sureties could require the last payment, if he was then in default.

4. BUILDER'S BOND — COST OF LITIGATING LIENS AS DAMAGES.—In an action on a building contractor's bond to keep a building free from liens, the owner's costs and expenses in defending foreclosure suits reasonably and judiciously conducted are recoverable as damages, in connection with the amount necessarily paid to remove the liens.

From Multnomah : HENRY E. McGINN, Judge.

Action on a builder's bond by Charles K. Henry against Charles B. and Willard Hand, sureties, and W. E. Mac-Leod. The defendant MacLeod, on January 4, 1893, contracted with plaintiff to construct a building for him, and complete the same on or before March 25, 1893. At the same time he executed and delivered to plaintiff a bond in the sum of $3,300, with the respondents, Charles B. and Willard Hand, as sureties therein, conditioned that "if the said N. E. MacLeod shall well and truly execute said contract, and build said building conformably to the said contract, the plans and specifications, and in every way fully comply with all the conditions therein expressed, which are incumbent upon them to perform, and shall keep said structure and the premises upon which the same shall be erected free from all mechanic's, material men's and other liens for the space of thirty-five days after the completion and delivery of said house to the said Charles K. Henry, then this bond shall be void ; otherwise, to be and remain in full force and virtue." Payments were to be made under the contract as the work progressed, except the last one, amounting to the sum of $839, which was not to be made until thirty days after the building was completed and accepted by the plaintiff. Accordingly $2,400 was paid while it was in

course of construction, but the balance or last payment was withheld. As constituting a breach of the bond, it is alleged that the said MacLeod failed to keep said building free from liens, as by said bond provided; that the Willamette Steam Mills Lumber & Manufacturing Company, and seven others, including the defendant MacLeod, filed liens against said building and the land upon which it is situated, and plaintiff was obliged to, and did, pay $329.35 in defending suits brought to foreclose four of such liens; that suits were prosecuted to a final decree, and the liens involved foreclosed, and that plaintiff was compelled to and did pay the sum of $1,387.26 in discharge and satisfaction of the same; that after deducting the balance due MacLeod, to wit, the sum of $839, there remained due to plaintiff the sum of $877.61, for which amount, with interest, judgment is demanded. The defendants Hand alone defend. They admit the execution of the contract and bond, but deny the alleged facts constituting the breach, and, as a separate defense, allege that a certificate, as conditioned by the contract, was issued by the architect in charge to MacLeod, the contractor, showing the completion of said building, and that he was entitled to the final payment of $839, whereupon MacLeod, for value, assigned and transferred the same to the defendant Charles B. Hand; that on or about July 8 said certificate was presented to plaintiff, and payment refused, and that the sum certified was wholly due at the time of such presentation; that, by reason of such refusal to pay, defendant Hand was prevented from paying and discharging the claims against said building for material furnished and labor performed. Other separate defenses were pleaded, but it is unnecessary for the purpose of this appeal to set them out. There was a judgment for defendants Hand, from which plaintiff appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. William York Masters.*

For respondents there was a brief and an oral argument by *Mr. Arthur Carpenter Emmons.*

MR. CHIEF JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1.   The questions involved in this controversy arise entirely upon the court's instructions to the jury.   The defendant's theory is that the simple filing of a claim did not constitute a lien, within the purview of the bond, and did not afford legal justification on the part of the owner, as against the sureties, for withholding the last payment after it became due.   The question as to when the payment became due, under the evidence, was left to the jury ;  but they were instructed that when due it was the duty of the owner to pay, notwithstanding claims of lien had been filed, provided suits had not been instituted for their foreclosure, and, even if suits had been commenced which the payment would have stopped, it was his duty to make it then ;  that he could not hold the money and hold the sureties too, contrary to the terms of the contract.   On the part of the plaintiff, it is contended that the bond in the suit is, in effect, one of indemnity against liability, and that a breach thereof by reason of a failure to keep the building free from mechanics' or other material men's liens for thirty-five days entitled the owner to recover the amount of such liens against the sureties, whether he had discharged them or not ; while, on the other hand, it is claimed that the liability for damages does not arise in favor of the owner until he has been actually damnified, or until he has been compelled to, or has, paid or discharged such liens ;  that the bond is, in effect, one of indemnity against damages, rather than

against liability. And in this view we concur. There is a marked analogy between this undertaking and a covenant that premises are free from incumbrances, or that the purchaser shall enjoy them free from incumbrances. This sort of covenant is distinguished from one to discharge incumbrances ; the distinction being that in the former instance no recovery can be had unless some damage is shown to have been inflicted, except it be of a nominal character. But where the covenant is to do a particular thing in exoneration of the covenantee, or to indemnify him against liability, the right of action is complete as soon as there is a failure to perform, or the liability has been incurred : Rawle, Cov. Title, p. 93.

*Haas* v. *Dudley*, 30 Or. 355 (48 Pac. 168), where there was an agreement to assume and pay the incumbrance, and to save the grantor harmless, is a good illustration of an undertaking to do a particular thing, and that the liability for the payment of the incumbrance became fixed when it fell due, whether it had been discharged by the grantor or not. So with an indemnity against liability. When the liability arises, damages are recoverable, to the extent of the liability, whether it has been discharged by the obligee or not. But "the covenant against incumbrances  *  *  *  is yet," says Rawle, "as respects the measure of damages, treated purely as a covenant of indemnity ; and it is well settled that if the incumbrance has inflicted no actual injury upon the plaintiff, and he has paid nothing toward removing or extinguishing it, he can obtain but nominal damages, as it is considered that he shall not be allowed to recover a certain compensation for running the risk of an uncertain injury :" Rawle, Cov. Title, p. 288. See, also, *De La Vergne* v. *Norris*, 7 Johns. 358 (5 Am. Dec. 281) ; 8 Am. & Eng. Enc. Law (2 ed.), p. 180. So it has been held in this state that "a covenant against incumbrances is broken, so as to entitle

the grantee to at least nominal damages, if at its date there was an outstanding incumbrance on the property not excepted from the operation of the covenant; and, where the grantee pays off an incumbrance not excepted from the covenant, the amount so paid may be recovered from the grantor, less whatever the grantee may have agreed to pay for that purpose :" *Corbett* v. *Wrenn*, 25 Or. 305 (35 Pac. 658). The undertaking in question is to keep the structure free from all mechanics', material men's, or other liens. It is of the same nature as a covenant that the purchaser shall enjoy the premises free from incumbrances, and of like character as the undertaking in *Cochran* v. *Selling*, 36 Or. 333 (59 Pac. 329), to "save harmless against the payment of any and all [existing] claims and demands, of whatever kind or nature," which was held to constitute an indemnity against damages, and not against liability. It is apparent, therefore, that the owner was not entitled to recover, as against the obligors in the bond, the full amount of the liens claimed, as soon as they became established under the law as liens upon the building, and that it was necessary for him to pay off and discharge the same before he could recover more than nominal damages for the breach.

2.   We come now to the question when a mechanic's lien becomes effective, as such, against the building and land upon which it is situated. Section 3671 of the statute provides that "a lien created by this act upon any parcel of land shall be preferred to any lien, mortgage, or other incumbrance which may have attached to said land subsequent to the time when the building or other improvement was commenced, or the materials were commenced to be furnished and placed upon or adjacent to the land." Section 3673 provides for the manner of filing a claim of such a lien, which must be done, if by the original con-

tractor, within sixty days after the completion of the build-
ing, but if by a mechanic, laborer, or other person, save
the original contractor, within thirty days after the com-
pletion, or after the party has ceased to labor thereon or
has ceased to furnish material therefor.    Section 3674
provides for recording the claim ;  and section 3675, that
"no lien provided in this act shall bind any building,
structure, or other improvement for a longer period than
six months after the same shall have been filed unless
suit be brought in a proper court," etc.    The clear in-
tendment of these sections is that the lien shall attach at
the time of the commencement of the structure, or when
the materials were commenced to be furnished or placed
upon or adjacent to the land.    But it remains inchoate
and defeasible until the claim therefor is filed in the man-
ner provided, at which time it becomes effective, and re-
lates back to the commencement of the structure.    The
last section cited was enacted upon the very assumption
that when the claim or notice is filed the lien becomes
binding, and its purpose was to continue it for a period
of six months, at least, and to give the parties a right, by
extending the time of payment, to prolong it for a period
of two years.    This construction is borne out by Phillips,
Mech. Liens (3 ed.), § 217, and *Welch* v. *Porter*, 63 Ala.
225, and is supported inferentially by *Inman* v. *Henderson*,
29 Or. 116 (45 Pac. 300).

3.    The purpose of the undertaking sued upon here is
quite apparent.    It was to preserve the building free
from liens until such time as they could no longer be
filed, under the statute, save by the original contractor.
The last payment was made to fall due, under the con-
tract, concurrently with the expiration of the latest time
for filing such claims under the law.    The contract and
bond were executed at the same time, and, for the pur-
poses of this case, must be construed as one instrument.

The bond was designed to insure a faithful observance by the contractor, so that a breach on his part would be a breach also on the part of the sureties; and if, on account of the breach, the owner was not required to make the last payment until the principal had performed, or was ready to perform, his withholding of the same would not exonerate the sureties. This depends upon whether the undertaking to keep the building free from liens, on the one hand, and the agreement touching the last payment, upon the other, were mutual and dependent, or independent and absolute promises. It is not entirely clear, from the language and terms of the contract and undertaking, what was the intention of the parties in this respect. The covenant is to keep the building free from liens for a time extending five days beyond the time for making the last payment; and this is perhaps suggestive of the idea that it was a purpose of so requiring the last payment to be made, that the contractor would be enabled to meet and remove any liens that might be filed. It must be conceded, however, that, if any such claims were filed within thirty days from the time of the completion, the contractor would be first in default, and hence could not ordinarily require performance until he himself had performed, or was ready to perform. The modern tendency of courts, where the matter of construction is left in doubt, is to prefer the one which renders the mutual promises or agreements dependent, rather than independent: Bishop, Cont. § 401. "Courts will not," says CATON, C. J., in *Mecum* v. *Peoria & O. R. R. Co.* 21 Ill. 533, "and ought not to, construe covenants and agreements independent, where one party may refuse to perform, and still enforce performance by the other, unless there is no other mode of construing the instrument—unless it clearly appears that such was the deliberate intention of the contracting parties at the time the instrument was executed." See,

also, *Hamilton* v. *Thrall*, 7 Neb. 210.   Within the rule thus stated we must incline to the construction that the contractor could not require the plaintiff to make the last payment so long as he was in default in keeping the building free from liens, and the sureties are not in a position to invoke a different rule.

As involving the rights and duties of the parties hereto, *Price* v. *Doyle*, 34 Minn. 400 (26 N. W. 14), is much to the purpose.   It was there said :   '' Irrespective of the alleged purpose for which the bond was executed, it seems apparent from the bond itself that it was executed for the protection of this plaintiff, and not for the benefit of subcontractors.   To the contract between Doyle and Pollock and Weisner the plaintiff was not privy.   No obligation rested upon him in respect thereto.   He had not the right to voluntarily pay the debt of Doyle, and to recover over against him: 1 Parsons, Cont. *471 ; *Nichols* v. *Bucknam*, 117 Mass. 488 ; *Exall* v. *Partridge*, 8 Term R. 308.   The property of the plaintiff, however, was liable to be charged with a lien, appropriated to the payment of the debt, and against this the plaintiff might protect himself.   For payments necessarily made for that purpose Doyle would be liable irrespective of the bond, and all of the defendants would be so liable upon the bond ;  but only as to claims which might be enforced against the premises had the plaintiff a right to make such payment, and to recover over from the party whose debt he assumes thus to discharge.''   Of course, it was incumbent upon the plaintiff to show the necessity for the payment of these lien demands, and that he was thereby damnified, before he could recover upon the bond ;  but, when he had shown this, his right of recovery is clear.   But this idea does not militate against his right in the meanwhile to withhold the payment, pending the settlement and removal of the liens.

4. The costs and expenses of litigation in the defense of the foreclosure suits, reasonably and judiciously conducted, are also recoverable, as legitimate and proper damages, in connection with the amount necessarily paid for the removal of the liens : 1 Sutherland, Dam. p. 142.

The instruction of the court below being inimical to these views, it follows that the judgment must be reversed, and the cause remanded for a new trial.

REVERSED.

Decided 18 December, 1899.