# CHARLESTON

Harvey *v.* Ryan *et al.*

Submitted January 30, 1906.　Decided February 27, 1906.

1. Injunction—*Sale of Land—Defective Title—Collection of Purchase Money.*

   Equity will enjoin the collection of purchase money on land where the vendee is in possession under conveyance with covenants of general warranty, where the title to the land is questioned by suit, prosecuted or threatened, or where it is clearly shown to be defective. (p. 143.)

2. Same.

   Such injunction will not be granted unless the bill alleges facts showing a clear outstanding title in a stranger, and the burden will be on the plaintiff to prove the existence of that title. Allegations of defect of title, which do not show in what respect such defect exists, or facts which establish nothing more than that the title is doubtful or unmarketable, will not support the application for an injunction. (p. 143.)

3. Same—*Eviction of Vendee.*

   Where a vendee has entered into possession of land, under deed with covenants of general warranty, and in an action of ejectment a stranger asserts title to and recovers the land, and the vendee is evicted, equity will enjoin the collection of the purchase money due the vendor therefor, upon proper bill filed for that purpose. (p. 139.)

4. Same—*Remedy at Law.*

   At common law, the defense of failure of consideration could not be interposed, nor damages for a breach of warranty of title claimed by way of recoupment, against a sealed instrument. But while, under our statute, these defenses can be made at law, yet where, but for the statute, equity would have jurisdiction, such equitable remedy is not taken away because the remedy at law is given by statute. (p. 141.)

Appeal from Circuit Court, Cabell County.

Bill by H. C. Harvey, executor, against M. B. Ryan and others. Decree for defendants and plaintiff appeals.

*Reversed.*

Wyatt & Graham, for appellant.
Simms & Enslow, for appellees.

Sanders, Judge:

On the 21st day of June, 1883, M. B. Ryan, by deed with

covenants of general warranty of title, conveyed to Robert T. Harvey a certain lot in the city of Huntington, in consideration of which Harvey executed his bond for $450, payable to Ryan. Ryan's grantor was one Andrew Griffith, who bought the lot of the Central Land Company.

Harvey placed a dwelling upon this lot shortly after his purchase, and on the 23rd day of December, 1885, John B. Laidley, claimant of the lot, instituted, in the circuit court of Cabell county, an action of ejectment for the recovery thereof, against Harvey's tenant, and, by an order of court, Harvey was substituted as defendant in the action.

After the institution of the action of ejectment, Griffith, as assignee of Ryan, brought an action of *assumpsit* in the circuit court of Cabell county on the note executed by Harvey to Ryan, whereupon Harvey filed his bill, setting up the facts of the purchase, the execution of the note, the pendency of the action of ejectment, and further alleging that some time in the year 1882, John B. Laidley instituted an action of ejectment against the Central Land Company to recover possession of a certain tract of land in the city of Huntington, within which tract was included the whole of the lot in question, and that in said action the Supreme Court of this State decided that the acknowledgment of the grantor, in the deed to the Central Land Company, was defective, and that, in all probability, Laidley would be adjudged the lawful owner of the lot in question. The bill, after alleging that Ryan and Griffith were non-residents, and insolvent, prayed that an injunction might be awarded, restraining the prosecution of the action of *assumpsit* until the matter respecting the title to the lot was adjudicated, which injunction was granted.

The action of ejectment brought by Laidley against Harvey was determined in September, 1900, it being ascertained by the final judgment entered therein that the plaintiff had an estate in fee simple in the lot, and that the value thereof, without improvements, was $450, and the value of the improvements made thereon by Harvey was $1000. Laidley elected to relinquish his estate in the lot to Harvey, at the value ascertained.

The parties to this suit having all departed this life,

the same was revived in the name of and against the personal representatives of such respective deceased parties.

On the 23rd day of July, 1904, the executor of R. T. Harvey, deceased, filed an amended and supplemental bill, which, after adopting the allegations of the original bill, and stating the result of the determination of the action of ejectment, alleged that Ryan and Griffith, though often requested, had failed and refused to protect Harvey's title to the lot, and especially the improvements thereon, and that Harvey was compelled to and did pay the judgment, interest and costs, which exceeded any sum which might be due on the purchase money note; that Harvey paid such purchase money, interest and costs through his attorney, Z. T. Vinson, who procured an assignment of the judgment from Laidley to himself; that after the death of Harvey, without the knowledge of his executor, the lot was advertised for sale under the order of sale entered in the action of ejectment, and sold, and purchased by Rufus Switzer, to whom Vinson had transferred the assignment from Laidley; that the Central Land Company, through its attorneys, had promised to save harmless all of its grantees in the property claimed by Laidley, but the Company failing to do so, as to this lot, the executor of Harvey, at the March term, 1904, of the circuit court, procured an order to be entered, showing that the judgment and costs in the action of ejectment had been paid, and the sale was thereupon set aside, and the action dismissed. The amended and supplemental bill averred that Ryan and Griffith were both non-residents, and died, insolvent, in the State of Ohio, and prayed that the injunction awarded R. T. Harvey be made perpetual, that the action of *assumpsit* be ordered dismissed, the bond canceled, and surrendered, and for general relief.

The administrator of Griffith and Ryan appeared and demurred to the original, and amended and supplemental bills, and moved to dissolve the injunction and dismiss the suit, which motions the court sustained, and entered an order to that effect. From this order the executor has appealed.

The single question presented by the bill is, whether or not equity has jurisdiction to grant the relief sought, or

whether the plaintiff should be relegated to his remedy at law. To determine this question, it will be necessary to know when equity will enjoin the collection of purchase money due the vendor, when the contract has been fully executed by a conveyance to the vendee, with covenants of general warranty of title. When we have determined this question, the facts will be found to be of easy application. The authorities in the different states are clearly at variance as to when a court of equity will intervene and grant such relief. "It is exceedingly difficult, if not impossible, by any process of generalization, to deduce from the decided cases principles of general application which shall serve as rules for the guidance of courts and practitioners." High on Injunctions, section 382. While such conflict exists, yet it is the well established, if not the universal rule, that a court of equity will grant such relief in cases of fraud or mutual mistake, or where the covenantor is insolvent, or a non-resident, or where to permit the collection of the purchase money will result in irreparable injury to the vendee.

In this State, and in Virginia, injunctions have been granted against proceedings to collect purchase money, when there is a complete failure of title, though the vendee is in the undisturbed possession of the property, and the vendor is neither insolvent nor a non-resident, and though no suit by the real owner against the vendee has been prosecuted or threatened. Maupin on Marketable Land Titles, 795, says: "The doctrine that the covenantee may retain the purchase money without suit prosecuted or threatened by the real owner, and with a solvent covenantor to make good the damages when a substantial breach of the covenants has occurred, has received little, if any, recognition without the States of Virginia and West Virginia, where it prevails. It is there rested upon the ground that the covenantee has no adequate remedy at law, there being no right of action on the covenant affirmatively or negatively by way of recoupment or equitable set-off, until eviction. Hence it appears that in those states there may be a condition of the title which would justify an injunction against the collection of the purchase money, and yet would not support the defense of recoupment or set-off at law." The doctrine is now well

settled, both in this State and in Virginia, by a long line of well considered decisions, beginning early in the jurisprudence of the State of Virginia, and followed in this State, that the collection of the purchase money will be enjoined, when the vendee is in possession under deed with covenants of general warranty of title, and when the title is questioned by suit prosecuted or threatened, or where the title is clearly shown to be defective, but this doctrine has. been extended farther in these states than in any other jurisdiction. It is said by Judge Green, in *Ralston* v. *Miller*, 3 Rand. 39: "This Court has, in favor of a purchaser, gone far beyond anything which has been sanctioned by the courts of chancery in England or elsewhere, in enjoining the payment of the purchase money after the purchaser has taken possession under a conveyance, especially with general warranty. Yet, it has never gone so far as to interfere unless the title was questioned by a suit either prosecuted or threatened, or unless the purchaser could show, clearly that the title was defective." And this was quoted with approval by JUDGE GREEN, of this State, in *Wamsley* v. *Stalnaker*, 24 W. Va. 223, and continuing, he said: "This is the view, which, according to my understanding of the case, has been followed in Virginia and West Virginia, when the vendee was protected by a warranty of title and had not been evicted."

The case of *Wamsley* v. *Stalnaker*, is a leading case, giving a review of several of the Virginia decisions upon this subject, which proceed upon the theory that the purchaser should not be required to pay the purchase money where he is in great danger of losing the property. He is not required to take the hazard of the future insolvency of his vendor. No right of action would exist in favor of the vendee until a breach of the covenant, and it being a covenant of general warranty of title, the breach would not occur until actual or constructive eviction. In discussing the question, JUDGE GREEN says that Judge Tucker, in *Koger* v. *Kane*, 5 Leigh 608, questions the right to the remedy where there is a covenant of good title, because such a covenant would be broken the instant it is entered into, if the title should be defective. And JUDGE GREEN also says: "Judge Tucker bases this right of a court of equity to enjoin the purchase money, though there is a general warranty deed held by the pur-

chaser, if the title is clearly shown to be defective, partly on the ground that on the general warranty the vendee could not sue at law till he was evicted, and seemed to regard it as doubtful whether such relief in equity would be given ; if in the deed there were other covenants, which could be sued upon at law before eviction, as, for instance, a covenant for good title; but this point was not decided nor do I know of its decision in any case in Virginia or in West Virginia. It would seem therefore, that the extension of the right of a court of equity to enjoin the collection of the purchase money by the vendor because of defect of title, however clear, might perhaps be confined to the case, when there was no other covenant but the covenant of warranty, and might not be recognized, when there were also covenants, on which the vendee could sue at any time at law, such as covenants of good title."

But in reviewing what Judge Tucker said, in *Koger* v. *Kane*, *supra*, we find that he used this language: "The jurisdiction thus confessedly exercised by the courts of equity with us, results from what may be called the preventive justice of those tribunals. It arrests the compulsory payment of the purchase money, when the purchaser can shew that there is either a certainty, or a strong probability, that he must lose that for which he is paying his money. It gives him the relief, too, though his demand may be in the nature of unliquidated damages, because he has no other means of ascertaining them. Thus, if the purchaser can shew, that he has received, a deed with general warranty, and that the title is bad, yet if he has not been evicted, he cannot maintain covenant at law, and ascertain his damages before that tribunal, in order then to set them off against the demand. If, indeed, there are covenants of good title, &c., it may be otherwise; and so it may often happen, that an action may be brought where there are such covenants of good title, &c., upon which the validity of the title may be tested, and the damages of the party ascertained. Whether in these cases, relief could be given in equity, it is not necessary here to say."

It will be observed that Judge Tucker says it is not necessary to decide this question; and, from his language, it would seem to be susceptible of the construction given by Judge Green, if this were all Judge Tucker said on the sub-

ject, but, continuing, he said: "But where there is only a covenant of warranty, this cannot be done; and hence, I conceive, the party would be entitled to the assistance of a court of equity, where he is full-handed with proof that his title is defective, although he has not yet been evicted."

This would seem to indicate that he thought, after eviction there would be stronger grounds for equity jurisdiction. And, then, in *Beale* v. *Seiveley*, 8 Leigh 675, Judge Tucker says: "With us it cannot be denied that the practice has been more lax. But even with us, relief is only given to a purchaser who had obtained his deed, where there had been an actual eviction, or where a suit is depending or threatened, or where the vendee, placing himself in the attitude of the superior claimant, can shew a clear outstanding title or incumbrance."

But even if that decision, in dealing with this question, did place it partly upon the ground that there is no breach of the covenant of general warranty until eviction, and, therefore, no right of action accrues to the vendee, still there is an additional reason why this remedy should be extended, that is, the remedy of the vendee, at law, is not adequate and complete. If the purchaser should be required to pay the purchase money, and the suit, prosecuted or threatened, should result in a total loss to him of the property, it would then be necessary for him to bring an action for breach of the covenant, while, in the meantime, the covenantor might have become insolvent. And this would also be true as to a vendee who had been evicted by reason of a superior title before the purchase money had been collected, because, while a right of action for damages would exist to the vendee, upon the covenant, yet the defense would not be available to him in an action brought against him upon a writing obligatory, given for the purchase money. The writing being under seal, it imports consideration, and a defense of failure of consideration or want of consideration cannot be interposed to a writing under seal, at common law. Neither could the damages resulting from a breach of the covenant of warranty be relied on as a common law counterclaim in the nature of recoupment, since the writing sued on is under seal. The supreme court of Virginia, in *Columbia Accident Ass'n* v. *Rockey*, 93 Va. 684, says: "But while a defendant, under

the plea of *non-assumpsit*, might give evidence of matter by way of recoupment, or in dimunition of the damages claimed by the plaintiff, even to the entire defeat of his action, yet it was not competent for the defendant to recover in that suit any damages he may have shown in *excess* of the damages of the plaintiff. If he wished to recover such *excess*, he could only do so in an independent action against the plaintiff. 4 Minor's Inst., Pt. 1, 793 and 798. Nor was it competent at common law, as against seal contracts, to prove a failure in the consideration of the contract, or fraud in its procurement, or breach of warranty of title or soundness of personal property, but the defendant was driven, as when he proposed to recover against the plaintiff any *excess* of damages, to his independent action at law to recover the damages he had sustained: 4 Minor's Inst., Pt. 1, 792; *Taylor* v. *King*, 6 Munf. 358; *Burtner* v. *Keran*, 24 Grat. 42; and *Hayes and Wife* v. *Va. M. P. Ass'n.*, 76 Va. 225. The object of the act of 1831 was to remedy these defects, and to enable a defendant both to make such defenses to a suit at law on specialties, and also to recover against the plaintiff any excess of damages he may have sustained, in order to settle in one suit all the rights of the parties arising under the contract, and to prevent circuity of action and a multiplicity of suits, Its object was to enlarge the right of the defence, and not to impair any previous right, or to take away such defences where the law previously permitted them to be made."

And in *Kinzie* v. *Riely's Ex'rs*, 100 Va. 109, it is held that damages for breach of warranty could not be claimed at common law by way of recoupment, against a sealed instrument. *Sterling Organ Co.* v. *House*, 25 W. Va. 83; *Williamson* v. *Cline*, 40 W. Va. 194; *Watkins* v. *Hopkins' Ex'or*, 13 Grat. 743. It will therefore be seen that although there is a breach of the covenant of warranty in the deed from Ryan to Harvey, yet he cannot set this up as a defense in the action brought against him upon the purchase money bond, but must rely upon his separate action for damages for a breach of the covenant, and not being able to make this defense to the action of *assumpsit*, a court of equity will not require him to pay the money to the vendor, and compel him to resort to his action upon the covenant, and take the hazard of his vendor's insolvency. We fail to see the reason for such

course. The title to the land has been adjudicated to be in Laidley, and Harvey has been ousted. The property for which the purchase money bond was given has been totally lost to him, and there is no reason why a court of equity should not enjoin its collection. His legal remedy is wholly inadequate. He may pay the money and then sue at law upon the covenant to recover it back, but this could not be a complete and adequate remedy. The vendor, in the meantime, may have become totally insolvent. This risk the vendee will not be compelled to accept, but equity will extend its aid and prevent the collection of the purchase money.

What we have said as to the defenses to a sealed instrument, applies to the common law doctrine, for, under our statute, section 5, chapter 126, Code, a defendant may plead failure of consideration, fraud in the procurement of the contract, or breach of warranty of title, but this is only concurrent with the equitable remedy, and by section 6 of the same chapter, it is provided that such defense need not be interposed at law, and if not so interposed, it can be availed of in equity. By this statute it was not intended that the equitable remedy be taken away, but, on the other hand, it is expressly reserved. It was only intended to permit such defense to be made at law, at the election of the defendant. Therefore, if equity, before the enactment of this statute, had jurisdiction, it still has jurisdiction, notwithstanding a remedy by defense at law is given by statute. *Knott* v. *Seamands*, 25 W. Va. 99; *Bias* v. *Vickers*, 27 W. Va. 456; *Jarrett* v. *Goodnow*, 39 W. Va. 602; *Kenzie* v. *Reily*, *supra*.

While some cases have been referred to, to support the views herein expressed, yet, to demonstrate more conclusively that the rule is firmly fixed, and has been followed in this State since the question was first presented, it may be well to review other cases on this subject. In *Womelsdorf* v. *O' Conner*, 53 W. Va. 314, it was held that where land was conveyed by deed with general warranty, and the vendee lost the land, that equity will enjoin the collection of the purchase money. JUDGE BRANNON, in delivering the opinion of the Court in this case, on page 316, says: "Counsel for O'Conner would impress upon us the law of actions upon a covenant of warranty; would treat this as if it were a suit by Womelsdorf to recover back money paid upon the land under a breach of

warranty. It is not such a suit. It is a suit to enable Wom-elsdorf to keep in his hands purchase money for his indemnity; I should rather say, not for his indemnity, should he lose the land, but to be relieved from paying money for land already irrevocably lost to him." And in *Bennett* v. *Pierce*, 50 W. Va. 604, the same doctrine is announced, citing with approval *Wamsley* v. *Stalnaker, supra.* And in the case of *Kinsport* v. *Rawson*, 29 W. Va. 487, we have: "Equity will enjoin the collection of purchase money on land on the ground of defect of title after the vendee has taken possession under conveyance from the vendor with general warranty, if the title is questioned by a suit, either prosecuted or threatened, or if the purchaser can show clearly, that the title is defective." It is said in this case to show that the title is questioned by a suit, either prosecuted or threatened, that the bill, on its face, must allege the ground on which the threatened suit is based, which must be such as will put a reasonable man in just apprehension of a loss of his land; that the mere fact that some one has asserted claim to the land is insufficient to justify a court of equity in restraining the collection of the purchase money. And in *Heavner* v. *Morgan*, 30 W.Va. 335, it was held that equity will not require a vendee, who has purchased land and taken a deed with covenants of general warranty, to pay the purchase money, when a part of the land sold is claimed by others, and the title is defective, but that if the purchaser can show clearly that the title is defective, equity will not require him to pay the purchase money until such defect is removed, or a proper abatement decreed, and citing with approval:    *Yancey* v. *Lewis*, 4 H. & M. 390; *Ralston* v. *Miller*, 3 Rand. 44; *Koger* v. *Kane*, 5 Leigh 696; *Clarke* v. *Hardgrove*, 7 Grat. 399; *Lovell* v. *Chilton*, 2 W. Va. 410; *Wamsley* v. *Stalnaker, supra;* and *Kinports* v. *Rawson. supra.* Also, see the following authorities: *Renick* v. *Renick*, 5 W. Va. 285; *Thompson* v. *Catlett*, 24 W. Va. 524; *McClaugherty* v. *Croft*, 43 W. Va. 270; *Morgan* v. *Glendy*, 92 Va. 86; *Gay* v. *Hancock*, 1 Rand. 72; *Beale* v. *Seiveley* 8 Leigh 658; *Grantland* v. *Wight*, 5 Munf. 295; *Richards* v. *Mercer*, 1 Leigh 125.

It is argued by counsel that there is no averment of irreparable injury, that while it is averred that Ryan, the immediate grantor of Harvey, is insolvent, yet it is not averred

that the Central Land Company, Harvey's remote grantor, is insolvent. The allegation of insolvency has never been one of the requisites for extending relief of this character, and even if it were so, it is averred in the bill that Ryan, the immediate grantor is a non-resident, having died, in the State of Ohio, insolvent, and the vendee would not be required to pay the purchase money and then resort to his action against a remote vendor. While it is true the Central Land Company conveyed with covenants of general warranty of title, which covenant runs with the land, and of which the vendee could avail himself, yet equity will not permit the collection of the purchase money from him, and compel him to resort to this remedy; and not only that, but the remote grantor would only be liable upon his covenant for the amount of the purchase money paid him, which might, in many instances, be wholly inadequate, even if such remedy should be resorted to. While it is true, in this case the consideration paid to the Central Land Company is the same as that paid by Harvey, yet this cannot alter the case, because the rule must be one of general application, and not one which may be applicable to some cases, and not to others.

We deduce from the authorities that it is clear, from the allegations of the bill, that equity has jurisdiction to enjoin the · collection of the purchase money. The original bill shows that the action of ejectment was instituted for the recovery of the land conveyed to Harvey for which the bond was executed. The amended and supplemental bill shows that the suit was prosecuted to a final termination, which resulted in a judgment in favor of Laidley. Harvey, having made improvements upon the property, the question of the value of the improvements, and the value of the lot, without improvements, was submitted to the jury, and the lot, having been found to be of the value of $450, and the value of the improvements, $1,000, Laidley elected to relinquish his title to the lot, and accept its value, and the lot was ordered sold unless the amount at which it was valued was paid by Harvey. Subsequently the lot was sold, but the sale was not confirmed, and Harvey satisfied the judgment. This being so, a court of equity will not require the payment of the purchase money by Harvey, and force him to his action upon

the covenant contained in his deed from Ryan, even if he were solvent, but the fact of his insolvency is an additional reason for equitable interference.

It is claimed that at the time Harvey purchased the lot, the ejectment suit was pending, and that this is an additional reason why a court of equity should not entertain him. The deed to Harvey is with covenants of general warranty of title, and although the action of ejectment was pending, yet this will not prevent him from enjoining the collection of the purchase money.

Care should be taken, however, to distinguish the case here from that class of cases in which injunctions to prevent a sale under a deed of trust, whether executed to secure deferred payments of purchase money, or to secure general indebtedness, have been freely granted in this State and in Virgina, upon the allegation that there is a cloud upon the title to the land about to be sold. In such cases, the injunction is granted until the cloud on the title is removed. This is done in the interest of all parties, that there may be no sacrifice of the property, and that the title of the purchaser may be assured.

For the reasons given, we reverse the decree of the circuit court, dissolving the injunction and dismissing the bill, and remand the cause.

*Reversed.*