Argued October 17, reversed and remanded December 19, 1922.

## PEARSON *v.* RICHARDS ET AL.

### (211 Pac. 167.)

**Covenants—In Action for Breach, Allegation Merely That Encumbering Lien was a Valid One Held Insufficient.**

1. In suit to compel remote grantors to pay off a reassessment on plaintiff's property, as agreed in their conveyance, to discharge plaintiff's property of the lien for the reassessment, a complaint alleging, as to the validity of such lien, only "that said lien is in fact a valid and subsisting lien against said property," *held* demurrable; as facts showing that the reassessment constituted a valid lien should have been stated.

**Pleading—Conclusions Ineffective and Require No Denial.**

2. A mere conclusion of law is not issuable, requires no denial, and does not aid a pleading.

**Covenants—Covenant of Warranty and One Against Encumbrances Independent Covenants.**

3. A covenant of warranty and a covenant against encumbrances are regarded as independent covenants.

**Covenants—Real Covenant Runs With Land.**

4. A real covenant runs with the land until a breach occurs, and a remote grantee can sue for a breach occurring while he is the owner of the land.

**Covenants—Whether Real or Personal Governed by Intention.**

5. When construing covenants in a deed, courts ought, if possible, to give effect to the intention of the parties, and if it appears from the whole tenor of the deed, the nature of the thing to be done, its relation to the property, the period of its continuance, and the like, that the parties intended that a covenant should run with the land, then the covenant should ordinarily be construed as a real covenant and therefore as one running with the land.

**Covenants—Covenants not Prospective are Personal.**

6. All covenants that are not prospective and do not pass with the land are personal, and, unless a covenant is clearly one against future disturbances, it is regarded as one *in praesenti*.

Covenants—Covenant Against Encumbrances is Personal.

7. A general covenant against encumbrances is a personal covenant, and therefore does not run with the land.

Covenants—Damages from Broken Covenant Do not Run With Land.

8. Damages arising from a broken covenant do not run with the land.

Covenants—Covenant to Pay a Reassessment if Adjudged Valid Held to Run With Land.

9. A covenant, "It is hereby understood that there is a certain reassessment for street improvement now in litigation against said property which grantors hereby agree and promise to pay should the court adjudge the same as a lien against said property," held intended to operate prospectively, and hence to run with the land, so that a remote grantee could sue for breach occurring during his ownership.

Covenants—Determination of Validity of Reassessment Covenanted Against Determinable in Suit to Enforce Covenant.

10. Where grantee of purchase-money mortgagor sued mortgagees, who, as grantors, had agreed in their conveyance, as respects a reassessment which the parties thought was in litigation against the property, to pay it, "should the court adjudge the same as a lien against said property," and plaintiff prayed that foreclosure be restrained and that the amount of the reassessment be set off against the amount due on the mortgage, held that, it appearing that there was in fact no litigation instituted to determine the validity of the lien, and the parties having left at large the question of who should move, it devolved upon plaintiff to obtain a judicial determination that the reassessment was valid, and that plaintiff could obtain such determination in the instant suit.

Covenants—Payment of Encumbrance not Always Necessary to Suit on Covenant Against Encumbrances.

11. While generally a covenantee cannot maintain an action at law for substantial damages for breach of covenant against encumbrances unless he has paid and extinguished the encumbrance, yet this general rule may be relaxed in equity, and it does not necessarily control a suit in equity, and therefore it is not indispensable in every suit that plaintiff shall first pay and extinguish the encumbrance.

Covenants—Action Maintainable When Covenant Against Liability Breached.

12. An action may be maintained upon a covenant against liability the moment the liability arises, and damages may be recovered to the extent of the liability, without previous payment by the covenantee of the liability.

Equity—Remedy at Law must be Complete to Preclude Equitable Relief.

13. That a party can avail himself of a remedy at law will not preclude him from obtaining relief in equity unless the legal remedy in respect to the final relief and the mode of securing it is as efficient as remedy in equity.

**Setoff and Counterclaim—Grounds of Equitable Setoff Stated.**

14. The single circumstance of mutual and independent demands does not authorize a court of equity to set off one demand against the other, but ordinarily there must be some supervening equity, as insolvency, nonresidence or the like, requiring the interposition of a court of equity for the protection of the demand sought to be set off.

**Mortgages—Equitable Defense may Fall Short of Counterclaim.**

15. A state of facts may constitute an equitable defense to the foreclosure of a mortgage, although falling short of a counterclaim within the meaning of Section 401, Or. L.

**Mortgages—Foreclosures may be Restrained Until Setoff Determined Right to Equitable Setoff not Shown by Pleading.**

16. Where grantee of purchase-money mortgagor sued mortgagees, who, as grantors, had agreed in their conveyance, as respects a reassessment which the parties thought was in litigation against the property, to pay it, "should the court adjudge the same as a lien against said property" and plaintiff prayed that foreclosure be restrained and that the amount of the reassessment be set off against the amount due on the mortgage, *held* that, as the complaint alleged no supervening equity, it was not sufficient to authorize setting off the reassessment against the balance due on the mortgage, but that plaintiff might restrain the foreclosure until the validity of the reassessment was settled, and, if the reassessment was held valid, the foreclosure might be postponed until the reassessment was paid.

**Covenants—Rule as to Apportioning Covenants Stated.**

17. It is a general rule founded on convenience that covenants are not apportionable, but, since the land itself is apportionable, an exception to this rule prevails whenever justice or even greater convenience requires a covenant to be apportioned, and therefore, if a single tract of land, with which a real covenant runs, is divided and sold to different persons, each person can in case of breach during his ownership sue for the breach.

**Mortgages—Where Reassessment, for Which Mortgagee was Liable, was not Apportionable Without City's Consent Foreclosure Would be Enjoined.**

18. In suit by grantee of purchase-money mortgagor, assuming the mortgage, to enforce mortgagee grantor's covenant to pay a reassessment covering the property in question together with the remainder of lots of which such property formed a part, *held*, that since plaintiff could not, without city's consent, cause the reassessment to be apportioned, it was proper that foreclosure of the mortgage should be refused until the mortgagees extinguished the reassessment.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

This is an appeal from a decree rendered upon the refusal of the appearing defendants to plead further

after the court had overruled a demurrer to the complaint. The only information we have concerning the facts is furnished by the complaint; and, of course, in the present condition of the record it must be assumed that the complaint contains a correct narrative of the facts.

This suit is prosecuted by S. R. Pearson as plaintiff against C. B. Richards and his wife Margaret I. Richards, and Lane Morley and his wife Stella Morley, and the City of Salem. All of the defendants defaulted, except Margaret I. Richards and C. B. Richards who filed a demurrer; and these two defendants are now contending that the demurrer should have been sustained.

The facts as related in the complaint are as follows:

On November 29, 1919, Margaret I. Richards and C. B. Richards conveyed to Eunice Fleenor by a warranty deed all of lot 6 except the west 80 feet, and that part of lot 5 beginning at a point 80 feet east of the southwest corner of said lot; thence north 38 feet; thence east to the alley; thence south 38 feet; thence west to the point of beginning; all in a certain block in the City of Salem. The deed contained the following warranty:

"That said premises are free from all encumbrances, and that they [grantors] will warrant and defend the same from all legal claims whatsoever."

The conveyance also contained the following:

"It is hereby understood that there is a certain reassessment for street improvement now in litigation against said property which grantors hereby agree and promise to pay should the court adjudge the same as a lien against said property."

106 Or.—6

Eunice Fleenor executed and delivered to Margaret I. Richards a mortgage covering the realty purchased from Margaret I. Richards and C. B. Richards. This mortgage was for $500 and provided that the amount should be paid in installments of $20 per month.

Thereafter Eunice Fleenor conveyed the premises to S. R. Pearson subject to the mortgage held by Margaret I. Richards. The "defendants Richards and defendants Morley are the owners of all that portion of lots 5 and 6 * * except that portion thereof owned by plaintiff."

The defendant Margaret I. Richards is still the owner and holder of the mortgage and there "is now due and owing thereon the sum of $250."

Prior to the conveyance to Eunice Fleenor the City of Salem attempted to levy an assessment on certain lots, including lots 5 and 6, for a street improvement, but the assessment was adjudged invalid: See *Watson* v. *City of Salem*, 84 Or. 666 (164 Pac. 567, 164 Pac. 1184), and *Albert* v. *City of Salem*, 84 Or. 677 (164 Pac. 569). The city made a reassessment on March 2, 1918, or more than a year prior to the conveyance to Eunice Fleenor. The reassessment involved a charge of $209.42 against lot 6 and a levy upon lot 5 for $191.95; and, consequently, if the reassessment is valid these two amounts with interest at the rate of 6 per cent per annum since March 2, 1918, are due and unpaid and each lot is burdened with the encumbrance of the reassessment. This is the reassessment which is referred to in the deed delivered to Eunice Fleenor, although the deed refers to the reassessment as "a certain reassessment for street improvement now in litigation against said property." The truth is that the reassessment.

"was not in litigation, nor has the validity of said lien since been in litigation, nor is there any effort

being made by defendant to start or institute any litigation to determine the legality or validity of said assessment.''

The ''defendants Richards have failed, neglected and refused to remove said encumbrance from the title to said real property, or to pay the said lien, and threaten to foreclose the mortgage held by Margaret I. Richards against the property held by plaintiff.'' The plaintiff ''is ready, able and willing to pay the balance due upon said mortgage at any time said defendants Richards will clear the title to said real property from the lien and claim of defendant City of Salem.''

The plaintiff says:

''That it is impossible to ascertain the exact amount of said street assessments and liens held by the defendant City of Salem against that portion of the real property owned by this plaintiff, for the reason that the said defendant City of Salem refuses to segregate said assessments and liens.''

The plaintiff prayed for a decree enjoining Margaret I. Richards from foreclosing her mortgage, segregating the street assessment and apportioning to the parts of lots 5 and 6 owned by the plaintiff whatever portion of the reassessment might be found to be the equitable share, and setting off such equitable share against the amount due on the mortgage and requiring plaintiff to pay the ''defendants Richards'' or the latter to pay the former, as the case might be whatever the difference may be between the amount due on the mortgage and the amount of the reassessment apportioned to the realty owned by the plaintiff.

The decree of the trial court was substantially in accordance with the prayer of the complaint. The court segregated the reassessment, including principal and interest, by apportioning the lump sum of

$220.34 to the parts of the two lots considered as an entirety owned by plaintiff, and the lump sum of $350.49 to the remainder of the two lots, considered as one tract, which remainder is owned by "defendants Richards and defendants Morley." The plaintiff was directed to pay into court within sixty days the difference between the amount due on the mortgage and the amount of the reassessment apportioned to the parts of the two lots owned by the plaintiff, and the decree further provided that if the plaintiff failed so to pay such difference Margaret I. Richards, the holder of the mortgage, could proceed to foreclose the mortgage, but if such difference was so paid then the mortgage should be canceled.

REVERSED AND REMANDED.

For appellants there was a brief and oral argument by *Mr. Claire M. Inman.*

For respondent there was a brief and oral argument by *Mr. Walter C. Winslow.*

HARRIS, J.—1. The appellants contend that, even though it be decided that the plaintiff is entitled to equitable relief, the decree must necessarily be reversed because the complaint fails to allege facts showing that the reassessment constituted a valid lien; and in our opinion this contention of the appellants must be sustained. The complaint merely alleges:

"That at all times herein mentioned there was and now is a lien against lot 6 * * for the improvement of 12th Street * * in favor of defendant City of Salem, and in the sum of $209.42, * * upon which there has been nothing paid, and that at all times herein mentioned there was a lien against lot 5 * * in the sum of $191.95 * * in favor of defendant City of Salem, and upon which no payments have been made"; and "that said lien is in fact a valid and

subsisting lien against said property, as above described.''

2. The very foundation of plaintiff's cause of suit is the claim that the reassessment is a valid lien. The plaintiff is asking a court of equity to relieve his property from the burden of the reassessment. If there is no lien there is no need for relief. There can be no lien unless the reassessment was a valid one. The plaintiff is the moving party and consequently he must allege and prove facts showing the existence of a lien. It must be remembered that the plaintiff is endeavoring to establish the fact that the appellants are liable for the payment of the reassessment. The plaintiff is seeking to charge a proportional amount of the reassessment against the appellants. The bald assertion that the reassessment ''is in fact a valid and subsisting lien against said property,'' is not sufficient in the face of a demurrer. If the appellants had answered without demurring to the complaint and had subsequently permitted the introduction of evidence without objection we might be justified in sustaining the complaint after decree on the authority of *Winters* v. *Privett,* 86 Or. 501 (168 Pac. 942); but in the instant case the appellants not only demurred but stood upon their demurrer and refused to answer; and in this situation the decision rendered in *Equitable Savings & Loan Assn.* v. *Hewitt,* 55 Or. 329 (106 Pac. 447), is conclusive, and by force of that precedent the plaintiff is required to allege facts from which the court can draw the conclusion that the reassessment is a valid lien. See, also, *Dillon* v. *Beacon,* 67 Or. 118, 121 (134 Pac. 778, 135 Pac. 336), where it is assumed in the course of the discussion that it is necessary to plead facts constituting a valid assessment and lien in an action

for damages resulting from the breach of a covenant in a deed. A mere conclusion of law is not issuable, requires no denial, and does not aid a pleading: *Almada* v. *Vandecar,* 94 Or. 515, 519 (185 Pac. 907).

3. The deed given by Margaret I. Richards and C. B. Richards contains a covenant of warranty, a general covenant against encumbrances, and a special covenant concerning the reassessment. A covenant of warranty and a covenant against encumbrances are regarded as independent covenants: 7 R. C. L. 1141, 1152. Plaintiff's cause of suit, if he has one, involves a consideration of the general covenant against encumbrances and the special covenant concerning the reassessment; and the appellants claim that these two covenants, whether taken singly or together, are personal and not real covenants, and that therefore the plaintiff cannot maintain a suit or action for the breach of either or both of such covenants for the reason that a right of action did not pass to the plaintiff.

4. If the covenant relating to the reassessment constitutes a personal covenant, the plaintiff cannot maintain this suit; but if in the attending circumstances it is to be treated as a real covenant, then such covenant runs with the land until a breach occurs and a remote grantee can sue for a breach occurring while he is the owner of the land: 15 C. J. 1253, 1256, 1259; 7 R. C. L. 1111, 1122, 1123.

5. When construing covenants in a deed courts ought if possible to ascertain and give effect to the intention of the parties, and if it appears from the whole tenor of the deed, the nature of the thing to be done, its relation to the property, the period of its continuance, and the like, that the parties intended that a covenant should run with the land, then in order to carry out such intention the covenant should

ordinarily be construed as a real covenant and therefore as one running with the land: *Brown* v. *Southern Pac. Co.*, 36 Or. 128 (58 Pac. 1104, 78 Am. St. Rep. 761, 47 L. R. A. 409); 7 R. C. L. 1085, 1101, 1102; 15 C. J. 1241.

It is said that

"a covenant to run with the land must, from its nature, have a continuance, and is made in contemplation of, and to guard against, some event which may fall out or happen in the future, or to provide for some act to be performed thereafter that respects the land." 7 R. C. L. 1100.

6. All covenants that are not prospective and do not pass with the land are personal: 11 Cyc. 1106; 7 R. C. L. 1111. See *Dickinson* v. *Hoomes,* 8 Gratt. (Va.) 353, 395. In *Post* v. *Campau,* 42 Mich. 90, 97 (3 N. W. 272), Judge Cooley used the following language:

"A covenant may be said to run with the land when its purpose is to give future protection to the title which the deed containing the covenant undertook to convey, and it does not run with the land when its whole force is spent in giving assurance against something which immediately affects the title and causes present damage."

See also 15 C. J. 1247. Unless the covenant is clearly one against future disturbance it is regarded as one *in praesenti:* 15 C. J. 1271; 11 Cyc. 1111.

7. Some authorities take the view that a general covenant against encumbrances is a real covenant and therefore runs with the land, while in a majority of the jurisdictions, including Oregon, the courts hold that it is a personal covenant and therefore does not run with the land: 7 R. C. L. 1105, 1112, 1135, 1163; *Sanford* v. *Wheelan,* 12 Or. 301, 307 (7 Pac. 324).

Usually controversies arising out of breaches of covenants against ·encumbrances involve situations where the covenant was breached at the moment the deed was delivered for the reason that at that very moment an encumbrance existed, and delivery of the deed plus the existence of the encumbrance at once effected a breach of the covenant; and consequently in those situations the distinction between real and personal covenants is not of great importance so far as a .remote grantee is concerned for the reason that even a real covenant upon breach ordinarily ceases to run with the land: 15 C. J. 1253.

8. Damages arising from a broken covenant do not run with the land: *Wesco* v. *Kern,* 36 Or. 433, 435 (59 Pac. 548, 60 Pac. 563). It may be assumed that if the instant case involved no covenant except a general covenant against encumbrances the plaintiff would not be entitled to sue the appellants on such covenant; because the reassessment if a valid lien, would, in that situation, have been an encumbrance at the time of the delivery of the deed to Eunice Fleenor and instantly upon the delivery of the deed such a covenant would have been broken. But something more than a general covenant against encumbrances is involved; the effect of the general covenant against encumbrances is modified, so far as such covenant relates to the reassessment, by a special covenant which was manifestly designed to operate prospectively.

9. It is conceded now by the litigants that they knew at the time of the delivery of the deed that a reassessment had been made by the City of Salem. The parties understood, although they were mistaken, that litigation involving the validity of the reassessment was pending; and so the parties inserted in the deed a covenant whereby the grantors agreed and

promised to pay the reassessment ''should the court adjudge the same as a lien against said property.'' The manifest purpose of this provision in the deed was to make the liability of the grantors dependent upon a future adjudication by a court that the reassessment was valid and to defer such liability until such adjudication. In the absence of this special provision the covenant against encumbrances would have been broken the moment the appellants delivered the deed to Eunice Fleenor if the reassessment was in truth valid. It may be assumed, without deciding, that when the facts are as they appear in *Graber* v. *Duncan,* 79 Ind. 565, relied upon by the appellants, that an agreement to discharge an existing lien on land conveyed ordinarily does not create a covenant running with the land but usually amounts to a mere contract to do a particular thing; but the facts in that case present a situation entirely different from the one here.

The appellants take two positions. On the one hand they assert that the covenant against encumbrances is a personal one and was broken when the deed was delivered, and that therefore Eunice Fleenor and not the plaintiff is entitled to sue; and on the other hand they insist that no court has yet ruled that the reassessment is valid, and that therefore no person can sue because the event, upon which depends the liability of the appellants, has not occurred. The parties were mistaken in their belief that litigation was pending at the time of the execution of the deed, and if such mistake operates to destroy the special covenant the result will be that the deed must be treated as one containing, a general covenant against encumbrances which was broken instantly upon delivery of the deed. But such result ought to be avoided if reasonably possible, because the gist

of the special covenant was the postponement of the obligation to satisfy the lien of the reassessment until such time as a court should decide that the reassessment is a valid lien. Apparently all persons concerned have acted upon the assumption that the purpose and actual effect of the special covenant was to postpone the possibility of a breach of any covenant affecting the reassessment until such time as a court might adjudge the reassessment valid. The manifest intention of the parties was to relieve the appellants from paying at the time of delivering the deed a questionable reassessment, so that they could avoid the possibility of losing any moneys paid on the reassessment if subsequently the reassessment should be judicially declared invalid; and this intention ought to be given effect. The special covenant was intended by the parties to operate prospectively and to run with the land; and, therefore, the plaintiff can sue for a breach occurring during the period of his ownership.

10. However, a breach has not occurred because two facts must combine before a breach is produced: (1) The lien must be a valid one; and (2) a court must adjudge the lien valid. The appellants contend that it does not devolve upon them to prosecute a legal proceeding to ascertain the validity of the reassessment but that the plaintiff is required as a condition precedent to the maintenance of this suit to obtain a judicial determination of the validity of the reassessment or to wait until some other interested person or the City of Salem begins and prosecutes such a proceeding to a final determination. The special covenant contains nothing to indicate that the parties contemplated that the defendant should prosecute a legal proceeding for the ascertainment of the validity of the reassessment. Nor does the special

covenant contain any language which directly or indirectly imposes upon the plaintiff a specific, definite and independent duty of initiating an action or suit in order to obtain a judicial determination. The parties left at large the question of who should move. However, the plaintiff is attempting to charge the appellants with a liability, and since he cannot successfully charge the appellants with such liability until he shows that the reassessment was valid, he must by suit or action obtain a judicial determination that the reassessment is valid, if no other person has done so, before he can compel the appellants to pay the reassessment; and no good reason exists to prevent him from obtaining in this suit a judicial determination concerning the validity of the reassessment.

11. There is a marked distinction between a covenant against encumbrances and a covenant against liability: *Henry* v. *Hand,* 36 Or. 492 (59 Pac. 330). The distinction between the two kinds of covenants claims our attention because the appellants are contending that the plaintiff cannot begin suit or action for the breach of the covenant concerning the reassessment until he first pays the amount of the reassessment and causes the lien to be discharged. In the case of a covenant against encumbrances the question of the amount of the damages may present itself in two phases: One, where the covenantee is entitled to recover only nominal damages; and, the other, where he is entitled to substantial damages. The covenantee is entitled to nominal damages the moment the covenant against encumbrances is breached, but ordinarily he must pay off the encumbrance before he can recover more than nominal damages: *Corbett* v. *Wrenn,* 25 Or. 305 (35 Pac. 658); *Henry* v. *Hand,* 36 Or. 492, 497 (59 Pac. 330); 7

R. C. L. 1164, 1184; 15 C. J. 1326, 1328. A covenant against encumbrances is a covenant of indemnity, and consequently the covenantee cannot recover unless he has been damnified and then only to the extent that he has been damnified: 7 R. C. L. 1123. The general rule is that a covenantee cannot maintain an action at law for substantial damages for the breach of a covenant against encumbrances unless he has paid and extinguished the encumbrance: *Henry v. Hand,* 36 Or. 492, 497 (59 Pac. 330); 15 C. J. 1272, 1274; but this general rule which governs actions at law may be relaxed in equity and it does not necessarily control a suit in equity: 15 C. J. 1327; *Duroe v. Stephens,* 101 Iowa, 358 (70 N. W. 610); *Boice v. Coffeen,* 158 Iowa, 705 (138 N. W. 857); and therefore, it is not an indispensable requisite in every suit that the plaintiff shall first pay and extinguish the encumbrance.

12. An action may be maintained upon a covenant against liability the moment the liability accrues, and payment by the covenantee is not a prerequisite for the maintenance of the action. When the liability arises damages are recoverable to the extent of the liability whether it has been discharged by the covenantee or not: 7 R. C. L. 1184; 15 C. J. 1294. Chief Justice WOLVERTON expresses the rule thus in *Henry v. Hand,* 36 Or. 492 (59 Pac. 330):

"Where the covenant is to do a particular thing in exoneration of the covenantee, or to indemnify him against liability, the right of action is complete as soon as there is a failure to perform, or the liability has been incurred."

The promise embraced in the covenant of the appellants' deed is to do a particular thing and the particular thing promised is to pay the reassessment "should the court adjudge the same as a lien

against said property.'' In reality the covenant involved here partakes of the nature of a covenant against liability rather than of a covenant of indemnity. However, whether the covenant be treated as a covenant of indemnity or as a covenant against liability or merely as one akin to and in the nature of either of such covenants, the plaintiff is not in any event absolutely required to extinguish the encumbrance as a prerequisite for the maintenance of this suit; because the rule which governs an action at law on a covenant of indemnity does not control a suit in equity, and the rule in both an action at law and in a suit in equity permits the maintenance of an action or of a suit on a covenant against liability without first paying the liability.

13. It is contended that the plaintiff has an adequate remedy at law. The fact that a party can avail himself of a remedy in a court of law will not preclude him from obtaining relief in a court of equity unless the legal remedy in respect to the final relief and the mode of securing it, is as efficient as the remedy which a court of equity can afford under the same circumstances: *South Portland Lumber Co.* v. *Munger,* 36 Or. 457, 473 (54 Pac. 815, 60 Pac. 5); *Hall* v. *Dunn,* 52 Or. 475, 479 (97 Pac. 811, 25 L. R. A. (N. S.) 193); *Butson* v. *Misz,* 81 Or. 607, 613 (160 Pac. 530).

14. It is also insisted that damages arising out of the breach of the covenant concerning the reassessment cannot be made the subject of a setoff in a suit in equity. The single circumstance of mutual and independent demands does not authorize a court of equity to set off one demand against the other; but ordinarily there must be some supervening equity as insolvency, nonresidence, or the like, requiring the interposition of a court of equity for the protection

of the demand sought to be set off: 34 Cyc. 636; 21 C. J. 133; *Whelan* v. *McMahan,* 47 Or. 37 (82 Pac. 19, 8 Ann. Cas. 725); and yet it has been held that if from the situation of the parties justice cannot otherwise be done equity may decree a setoff of even an unliquidated demand, or at least defer entering a decree to enable the defendant to have his demand liquidated: 24 R. C. L. 857; and furthermore, as stated in 25 Ency. of Law (2 ed.), 544, following an eminent jurist, cited in *Whelan* v. *McMahan, supra,*—

"The cases in which courts of equity will extend the doctrine of setoff and claims in the nature of setoff beyond the law are so very various as to admit of no comprehensive enumeration."

15. The general rule of course is that one who accepts a conveyance with covenants upon which he has an adequate remedy at law is confined to such legal remedy; but if that legal remedy would be inadequate a court of equity may sometimes intervene for the protection of the covenantee; and so too, for example, in a suit to enforce a vendor's lien it has been held that equity has jurisdiction to award relief to the grantee by abating from the purchase price any damages resulting from a breach of his grantor's covenants: 7 R. C. L. 1189; *Smith* v. *Ward,* 66 W. Va. 190 (66 S. E. 234, 33 L. R. A. (N. S.) 1030); *Smith* v. *White,* 71 W. Va. 639 (78 S. E. 378, 48 L. R. A. (N. S.) 623). See, also, *Harvey* v. *Ryan,* 59 W. Va. 134 (53 S. E. 7, 115 Am. St. Rep. 897, 7 L. R. A. (N. S.) 445), and *Kreinbring* v. *Mathews,* 81 Or. 243 (159 Pac. 75). Of course in a suit to foreclose a mortgage the court will not award a money judgment against the mortgagee based on a pleading alleging damages arising out of a purely legal claim; and the counterclaim on which a defendant may have affirmative relief in an equity suit must contain matter of

equitable cognizance: *Hanna* v. *Hope,* 86 Or. 303, 310 (168 Pac. 618); and, yet, a given state of facts may constitute an equitable defense although falling short of a counterclaim within the meaning of Section 401, Or. L.: *Kreinbring* v. *Mathews,* 81 Or. 243 (159 Pac. 75); *Gabel* v. *Armstrong,* 88 Or. 84 (171 Pac. 190).

16. The complaint filed in the instant suit does not allege any fact or facts constituting a supervening equity; and, therefore, the complaint as it now reads is not sufficient to authorize setting off the reassessment against the balance due on the mortgage. However, the plaintiff may restrain the foreclosure of the mortgage until the question of the validity of the reassessment is settled, and if the reassessment is held valid, the foreclosure may be postponed until the reassessment is paid.

It must be remembered that the appellants threaten to foreclose the mortgage with the question of the reassessment still undetermined: It has been held, as said in *Kreinbring* v. *Mathews,* 81 Or. 243, 247 (159 Pac. 75), that the covenantor must dispose of an outstanding encumbrance, which is affected by a covenant against encumbrances, before equity will foreclose his purchase money mortgage: *Van Riper* v. *Williams,* 2 N. J. Eq. 407. Moreover, in some circumstances the prosecution of a suit to foreclose a mortgage may be enjoined in order to prevent a multiplicity of suits: 27 Cyc. 1538.

17. It is a general rule founded on convenience that covenants are not apportionable, but since the land itself is apportionable, an exception to this rule prevails whenever justice or even greater convenience requires a covenant to be apportioned; and, therefore, if a single tract of land, with which a real covenant runs, is divided and sold to different persons, each person can in case of breach during his ownership

sue for the breach: 15 C. J. 1245, 1259; *Dickinson* v. *Hoomes,* 8 Gratt. (Va.) 353, 406; *Fields* v. *Squires,* Deady, 366, 375; *St. Clair* v. *Williams,* 7 Ohio (Part II), 110 (3 Am. Dec. 194); 7 R. C. L. 1100; and it has been held where a mortgage covered other lands and cannot be apportioned the measure of damages is the whole amount of the mortgage: 15 C. J. 1326; *McGillivray* v. *Minico Real Estate Security Co., Ltd.,* 28 Ont. 265.

18. But in the instant case the plaintiff cannot cause the reassessment to be apportioned unless the City of Salem consents. The city is not a party to any deed or contract relating to the premises. The city is an agency of the sovereign state. The reassessment was made to pay for a public improvement. It is in the interest of the public welfare that the reassessment remain intact as an entirety, and that every dollar of the total amount continue to be protected by the entire lot until fully paid; and hence each assessment ought to be treated as an entirety which is not apportionable, unless the city consents to an apportionment.

The situation presented by the record is an unusual one. The plaintiff can maintain an action at law and recover the damages caused by the breach of the covenant concerning the reassessment, but before he can maintain an action at law he must show two things: (1) A judicial determination that the reassessment is valid; and (2) payment of the encumbrance; for the appellants are not obliged to pay until these two things are shown. If relegated to an action at law the plaintiff would be obliged first to prosecute a suit, probably against the city, and possibly against others, in order to secure an adjudication of the validity of the reassessment; and in the meantime the appellants will have foreclosed the

mortgage, if they carry out their alleged threat.    It is possible to dispose of the whole matter in this suit and thus prevent a multiplicity of legal proceedings. Indeed as expressed by Mr. Justice McBRIDE in *Kreinbring* v. *Mathews, supra:*

"It is one of the attributes of equity, and its chief excellency, that it will reach out and administer specific relief according to the exigencies of the particular case."

And it is peculiarly fitting that in this case the Circuit Court, upon proper pleadings being filed, try out the question of the validity of the reassessment; and if the reassessment is valid that court can refuse to foreclose the mortgage until the appellants first extinguish the reassessment; and, furthermore, if facts constituting a supervening equity are alleged and proved, the court may proceed in accordance with the rules mentioned in this opinion.

The decree is reversed and the cause is remanded.

REVERSED AND REMANDED.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.