# CHARLESTON.

John Pelzel, *Admr., v.* Pen-Mar Coal Company *et al.*

(No. 5618.)

Submitted March 2, 1926.    Decided March 23, 1926.

Corporations—*When Court of Equity Has Properly Taken Charge of Insolvent Mining Company, It Will Not Ordinarily Permit Company's Landlord, In Advance of Adjudication of Claims of Creditors, to Forfeit Lease and Re-enter Demised Premises (Code, C. 53, § 58).*

When a court of equity has properly taken charge of an insolvent mining company's operation, the court will not ordinarily permit the company's landlord, in advance of an adjudication of the claims of all the creditors, to forfeit the lease and re-enter on the demised premises.

(Corporations, 14a C. J. § 3156 [Anno].)

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by C. H. Hetzel against the Pen-Mar Coal Company and others for the appointment of a receiver and for other relief. On the death of the plaintiff, the cause was revived in the name of John Pelzel, his administrator. From a decree dissolving an injunction and revoking the powers of the receiver, as far as either interfered with the right of C. A. Goshorn and others, lessors, to enforce a forfeiture of the lease, the administrator and others appeal.

*Reversed and remanded.*

*Joe N. Kenna* and *W. T. George,* for appellants.
*Poffenbarger, Blue & Dayton,* for appellees.

Hatcher, Judge:

This is a suit in chancery, brought in 1924 in the circuit court of Kanawha County, by C. H. Hetzel, a creditor and stockholder of the Pen-Mar Coal Company, against the company and all its creditors. The bill set out the assets of the company, as well as the several amounts of the claims of the

plaintiff and the other creditors. It alleged that by reason of the condition of the coal market, the company could no longer operate its mine profitably or meet its obligations; that it was insolvent; and that by reason of judgments already recovered and suits threatened against the company, its assets were in imminent danger of being dissipated and sacrificed at forced sales to satisfy rapacious creditors. Admitting specifically an installment of $500.00 to be due on royalty, the bill asked that G. A. Goshorn and others, lessors of the property mined by the said company, be restrained from prosecuting distress warrants against the company, and from declaring a threatened forfeiture of the company's lease. The bill also prayed for the appointment of a receiver, and for an injunction restraining the creditors generally from prosecuting further legal actions against the company, for a reference to a commissioner to report the debts and assets of the company, for the sale of as much of the property of the company as was found necessary for the payment of its debts, and for the payment of such debts in their respective priorities, etc.

On May 9, 1924, a receiver was appointed and an injunction issued as prayed for.

Sometime after the suit was brought the plaintiff died and the cause was revived in the name of his administrator, John Pelzel.

The lessors filed a joint answer and cross bill at January rules, 1925, which set up several grounds of forfeiture of the coal company's lease, and prayed that the injunction against the lessors be dissolved, and the receiver be discharged, in so far as either prevented the lessors from taking steps to forfeit the lease. Alternatively the answer asserted a lien upon the leased property and the improvements thereon for minimum royalty in arrears at the date the answer was filed of $2000.00. Of this amount $1500.00 had accrued since the suit was brought.

On August 8, 1925, the Pen-Mar Coal Company, the administrator, and M. E. Moore (surviving partner of Hetzel) filed an answer to the plea of the lessors, which answer challenged the amount of royalty alleged due by the lessors,

averred that the value of the physical properties of the company in the hands of the receiver was $77,700.00, and alleged that if the lease be forfeited in the manner contemplated by the lessors, the remaining crditors of the company would get nothing, but that if the assets of the company be properly handled and disposed of, all the debts of the company would be paid, including the royalty due the lessors.   On the day the answer was filed, the cause was referred to a commissioner to take and state an account showing the .said company's debts, assets, etc., but the reference was not to prejudice a motion which had been theretofore made by the lessors for the same relief as that sought in their answer and cross bill.

A partial and preliminary report was filed by the commissioner on October 20, 1925, upon the request of counsel for lessors, which stated that the lease of the said company stipulated that the lessors should have the right to declare an absolute forfeiture of the leasehold estate upon the appointment of a receiver for the company, or upon its becoming insolvent; that there was a dispute between the company and the lessors with respect to the amount of royalties due; that a minimum royalty of $500.00 quarterly was specified in the lease; and that when the receiver was appointed, at least one such quarterly payment was past due.   The commissioner' requested a recommitment to him so he could complete his report.   We find no exception to this report.

The lease filed with the answer of the lessors provided for a re-entry on the leased premises by the lessors, after thirty days' written notice, in case of default in the payment of any installment of the royalty for a period of thirty days.

On November 12, 1925, a decree was entered which dissolved the injunction and revoked the powers of the receiver, in so far as either inhibited or interferred with the exercise of the right of the lessors to declare and enforce a forfeiture of the lease.   The decree also gave the lessors leave to sue the rceiver in any court of competent jurisdiction for the possession of the demised premises and ordered the discharge of the receiver unless someone paid the lessors $3500.00, which sum was fixed by the court as the amount of minimum royalty then

due the lessors. Further proceedings under the order of reference were stayed until directed by the court.

From this decree an appeal was taken by the Administrator, the Pen-Mar Coal Company, and M. E. Moore.

The situation in this case, concisely stated, is as follows: The Pen-Mar Coal Company owes numerous creditors besides the lessors; the claim of the lessors amounts to only a few thousand dollars, while the property of the company is alleged to be worth many thousands of dollars, and in fact to be more than sufficient to satisfy all the creditors if properly handled and disposed of; the lower court, through its receiver was caring for such assets of the company, and through its commissioner was ascertaining the indebtedness of the company; the purpose of the court was, through a sale of the company's property, to settle the claims of all the creditors as far as possible, including the claim of the lessors; yet before a complete report of the indebtedness of the company has been made, or the priorities of the creditors ascertained, the lessors demand the right to halt the entire court proceedings, to forfeit the lease, and to receive from the court or have ''the hand of the court lifted'' from the possession of the physical properties of the company. Such proceeding would leave little if anything in the hands of the court to satisfy the claims of the other creditors. There is no charge of mismanagement against the receiver, and the obvious purpose of the lessors is to secure an overwhelming advantage of the other creditors.

The demand of the lessors is based on the rule that a court of equity will require a party in default to fulfill his covenant before being absolved from the effect of his delinquency; on the fact that no offer has been made in this case by the company to satisfy its obligation to the lessors; and on the theory that in such case equity will not prevent recourse to legal remedies.

We might be impressed with the lessors' argument if the rights of no one were involved but those of the lessors and the lessee. However, the rights of numerous other parties are seriously affected. We discern no equitable reason for determining and attempting to satisfy the claim of the lessors in advance of all the other creditors. We see no equity in

turning over to the lessors property worth many times their claim, when by so doing, other creditors may be prevented from or hindered and delayed in the collection of their demands. *Bryant* v. *Thomas,* 143 Ga. 217 (222). One of the very authorities cited in support of the decree of the lower court admonishes that ''Equity will not permit the enforcement of a forfeiture in an inequitable manner.'' *Ry. Co.* v. *Triadelphia,* 58 W. Va. 487. To this principle all rules relating to forfeiture must yield.

We are not unmindful that equity follows the law and where equities are equal the first in order of time must prevail. These maxims will be given due consideration in the final determination of this cause. But ''equality is equity'', and courts must treat all claimants alike until relations or conditions are established requiring different treatment. 21 C. J. 206. True, the lessors in this case assert a preference for their demands over those of common creditors. We cannot know, however, in advance of a final determination that there are no other claimants who will also assert a preference and who will stand on the same footing as the lessors. While equity regards with favor the diligent, it does not subscribe to the saying ''First come first serve.'' A suit in equity must not be resolved into a race, in which the subject matter of the litigation is awarded to the aggressive, claimant who first secures the attention of the chancellor. The diligence upheld by equity is diligence in securing a lien or some vested right. Equity recognizes no particular merit in the diligence that merely presses such lien or right. *In re Receivership Chemical Co.,* 7 Del. Chy. 248. In seeking to advance his demands, a creditor must accord to all other creditors the opportunity to have their respective claims adjudicated. 21 C. J. 174. Otherwise a creditors suit would become virtually an *ex parte* proceeding. ''While the common law looked at and protected the rights of a person as a separate and distinct individual, equity rather regards and maintains, as far as possible, the rights of *all* who are connected by *any* common bond of interest or of obligation. The principle, Equality is equity, or Equity delighteth in equality, is of very wide and general application. It furnishes a practical rule for the

guidance of equity courts in their administration of reliefs, whenever they obtain jurisdiction over a great variety of cases, unless compulsory dogma of the law stands in the way." Pomeroy's Eq. Juris. par 405.

The condition of the company's affairs as alleged in the bill was "sufficient cause" to give jurisdiction to a court of equity under Sec. 58, Ch. 53, Code and to justify both the injunction and the receivership. It therefore became the duty of the court to retain the cause for all purposes "necessary to the final determination of all matters growing out of and connected with the subject matter of the suit." Beach On Modern Eq. Juris. par 21; *Watson* v. *Watson,* 45 W. Va. 290; *Mfg. Co.* v. *Price,* 49 W. Va. 432; *Smith* v. *White,* 71 W. Va. 639 (641). Why should a court *retain a cause* for further determination after turning over to one of several creditors all the assets of a debtor? Upon what, in such case, would the court impress a judgment in favor of the other creditors? The retention of a cause until all matters, etc., are settled, necessarily implies a retention by the court of its jurisdiction over the subject matter of the suit. In order for the court to properly settle in this suit all matters involved in this litigation, it is necessary for it to *retain* in its possession the property of the Pen-Mar Coal Company so that such property may be subjected without hindrance or delay to its final order.

For the foregoing reasons the decree of November 12, 1925, will be reversed and the cause remanded.

*Reversed and remanded.*